# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| MY HEALTH, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALR TECHNOLOGIES, INC., <br><br> Defendant. | Civil Action No. <br><br><br><br> **(JURY TRIAL DEMANDED)** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, My Health, Inc. ("*My Health*" or "*Plaintiff*"), by and through its attorneys, makes and files this Complaint against Defendant ALR Technologies, Inc. ("*ALR,*" or "*Defendant*"). In support of this Complaint, Plaintiff alleges and complains as follows:

### PARTIES

1. My Health is a Delaware corporation having its registered agent and principal place of business in the Eastern District of Texas.

2. All right, title, and interest in and to the Patent, including the right to sue for all past and present infringement damages, was assigned by the University of Rochester to My Health.

3. Michael E. Eiffert M.D. ("*Dr. Eiffert*"), the CEO of My Health and an inventor of United States Patent No. 6,612,985 entitled "Method and system for monitoring and treating a patient" (the "*'985 Patent*").

4. Upon information and belief, ALR Technologies, Inc. is a corporation organized under the laws of the state of Nevada, with its principal place of business located at 7400 Beaufont Springs Drive, Suite 300, Richmond, Virginia, 23225.

5. Upon information and belief, ALR has sold, currently sells, and offers for sale the Accused Products and other infringing products through the stream of commerce in retail stores and other outlets within this jurisdiction.

6. ALR has not been granted a license or any other rights to the '985 Patent.

7. On information and belief, ALR has generated significant sales of products incorporating the Plaintiff's technology, easily exposing ALR to significant liability for its infringement of the '985 Patent.

### SUMMARY OF THE CASE

8. While affiliated with the University of Rochester, Dr. Eiffert and Lisa C. Schwartz invented a unique technology that assists healthcare providers in monitoring and treating patients. Consequently, on September 2, 2003, the University of Rochester was awarded the '985 Patent, that it later assigned to My Health.

9. My Health is an early stage company, fostering medical technologies through the proof of concept stage for larger, more established entities.

10. My Health focuses on serving as a pipeline for new technologies, assisting scientists and engineers in bringing their ideas to fruition and, ultimately, to companies with the expertise to market on a global scale.

11. My Health's technology and platform also helps by automating other tasks such as branding staffing, human resource management, payroll, retirement planning, marketing and practice development, and revenue cycle management.

12. My Health offers licenses of the '985 Patent to health care and technology companies and has currently granted more than 40 licenses to leaders in these industries.

13. ALR engaged in and continues to engage in willful and knowing patent infringement because it has actual knowledge of the patent at least as early as January 2015 when My Health's licensing agent contacted ALR and provided it with a preliminary claim chart, and yet ALR continues to practice the technology covered under the '985 Patent.

14. On information and belief, ALR has generated significant sales of products incorporating the Plaintiff's technology, easily exposing ALR to significant liability for its infringement of the '985 Patent.

## JURISDICTION AND VENUE

15. This is a claim for patent infringement that arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. § 271.

16. This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338, and applicable principles of supplemental jurisdiction.

17. Defendant is subject to personal jurisdiction in the state of Texas (this "*State*") and this judicial district consistent with the principles of due process because it transacts business, contracts to supply goods or services in this judicial district, and has otherwise purposefully availed itself of the privileges and benefits of the laws of Texas and is therefore subject to the jurisdiction of this Court.

18. Defendant employs residents of this State who work in this state as medical sales representatives, offering for sale the Accused Products in this State and this judicial district.

19. Upon information and belief, Defendant places products for sale online and in stores to be used, shipped, and sold in this State and this judicial district.

20. Upon information and belief, Defendant also places the Accused Products in the stream of commerce with the expectation that they will be bought and sold in this judicial district.

21. Defendant has offered and continues to offer its products for sale in this State, has transacted business and continues to transact business in this State, has committed and/or induced acts of patent infringement in this State, and/or has placed infringing products into the stream of commerce through established distribution channels with the expectation that such products will be purchased by residents of this State.

22. Such Accused Products has been offered for sale and sold in this State and in this judicial district through various outlets.

23. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 because ALR has done business, has infringed, and continues to infringe the '985 Patent within this District as stated more fully above, and this action arises from transactions of that business and that infringement.

**FIRST CLAIM FOR RELIEF**

**INFRINGEMENT OF U.S. PATENT NO. 6,612,985**

24. The '985 Patent, a copy of which is attached hereto as **Exhibit A**, is entitled "Method and System for Monitoring and Treating a Patient" and was duly and legally issued by

the United States Patent and Trademark Office. My Health is the owner of all right, title and interest in and to the '985 Patent, including standing to sue and recover all past, present, and future damages for infringement of the '985 Patent.

25. My Health has complied with the provisions of 35 U.S.C. § 287.

26. Upon information and belief, Defendant, either alone or in conjunction with others, has infringed and continues to infringe, contribute to infringement, and/or induce infringement of the '985 Patent by making, using, selling, and/or offering to sell, and/or causing others to use, methods and systems, including, but not limited to the ALRT Health e-Connect (the "***Accused Product***"), which infringes one or more claims of the of the '985 Patent, including, but not limited to claims 1, 4, and 7 of the '985 Patent.

27. By way of example and not as a limitation, Defendant's Accused Product conducts each and every element of the '985 patent's method claims 1 by:

    a. Determining a current assessment of one or more diagnosed conditions in a patient based on data about each of the diagnosed conditions from the patient who is at a remote location and on one or more assessment guidelines for each of the diagnosed conditions through its patient monitoring system that allows health care providers to remotely track patient health conditions and patient health management activities through applicable hardware and software; its system monitors the health status of patients in the time interval between patient visits to the doctor's office;

    b. Updating an existing treatment plan for each of the diagnosed conditions based on the existing treatment plan, the current assessment, and on one or

more treatment guidelines for each of the diagnosed conditions to generate an updated treatment plan for each of the diagnosed conditions through its facilitators that regularly review the data and testing frequency according to clinician approved protocols to determine if patients or members or users are adhering to their care plan and if their blood glucose levels require the intervention of a clinician; upon this determination, the Accused Product recommends corrections in the patient's care plan, provides more frequent opportunities for coaching, and gives patients remote medical support;

c. Reviewing the updated treatment plan for each of the diagnosed conditions through its hardware and software that sends data between the patient and the health care provider, which can be analyzed by patients, caregivers, providers, health plans, and others; Defendant's population management capability allows DCFs to focus on patients that need attention based on criteria set by clinicians and allows DCFs to see actual test results to determine if they are in line with each specific patient's prescribed care plan;

d. Determining if one or more changes are needed to the reviewed treatment plan for each of the diagnosed conditions as stated on Defendant's website: "ALRT's Diabetes Care Facilitators (DCFs) will regularly review the data and testing frequency according to clinician approved protocols to determining if patients or members or users are adhering to their care plan and if their blood glucose levels require the intervention of a clinician;

  e. Changing the reviewed treatment plan if the one or more changes are determined to be needed by recommending corrections in the patient's care plan and the patient taking corrective action as prescribed by the physician;

  f. Providing the patient with the reviewed treatment plan for each of the diagnosed conditions through its communications platform that coordinates secure message, text and e-mail communication between patients and health care providers; and

  g. Generating and providing compliance data based on the updated treatment plan and the reviewed treatment plan for each of the diagnosed conditions through its platform that allows the system to easily query the system to see which patients are not adhering to their care plan and includes "metrics and reminders to track and enhance performance to recognized standards and quality measures," according to Defendant's website.

28. Defendant is liable for infringement of one or more claims of the '985 Patent, including, but not limited to claims 1, 4, and 7, pursuant to 35 U.S.C. § 271 as set forth therein and incorporated by this reference, by making, using, selling, offering for sale, and/or importing the Accused Products.

29. Defendant is liable for indirect infringement of the '985 Patent by inducing and/or contributing to direct infringement of the '985 Patent committed by end users of the Accused Products.

30. From at least as early as January 2015, when ALR was given actual notice of the '985 Patent, ALR induced infringement because it knew, or should have known, that its acts

would cause patent infringement, and it acted with intent to encourage direct infringement by its users.

31.     At least as early as January 2015, ALR contributed to direct infringement by its end users by knowing that its Accused Products and methods would be implemented by its end users; that its methods, components, system and Accused Products were especially made or especially adapted for a combination covered by one or more claims of the '985 Patent; that there are no substantial non-infringing uses; and the Accused Products is a material part of the infringement.

32.     ALR has knowledge of the '985 Patent and is infringing despite such knowledge. The infringement has been and continues to be willful and deliberate.

33.     ALR's acts of infringement have damaged Plaintiff, and Plaintiff is entitled to recover from ALR the damages sustained as a result of ALR's wrongful acts in an amount subject to proof at trial, but in no event less than a reasonable royalty.

34.     ALR's infringing activities have injured and will continue to injure Plaintiff unless and until this Court enters an injunction prohibiting further infringement of the '985 Patent.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that, after a trial, the Court enter judgment against Defendant as follows:

A.      An entry of final judgment in favor of Plaintiff and against Defendant;

B.      An award of damages adequate to compensate Plaintiff for the infringement that has occurred, but in no event less than a reasonable royalty as permitted by 35

U.S.C. § 284, together with prejudgment interest from the date the infringement began;

C. An injunction permanently prohibiting Defendant and all persons in active concert or participation with any of them from further acts of infringement of '985 Patent;

D. Treble damages as provided for under 35 U.S.C § 284 in view of the knowing, willful, and intentional nature of Defendant's acts;

E. Awarding Plaintiff its costs and expenses of this litigation, including its reasonable attorneys' fees and disbursements, pursuant to 35 U.S.C. § 285; and

F. Such other further relief that Plaintiff is entitled to under the law, and any other and further relief that this Court or a jury may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all claims and issues so triable.

Respectfully Submitted,

Dated: May 19, 2016

By: /s/Elizabeth L. DeRieux
Joseph G. Pia
joe.pia@padrm.com
Texas Bar No. 24093854
Robert Aycock (Admitted in this District)
Utah State Bar No. 8878
raycock@padrm.com
Sara Payne (Admitted in this District)
Utah State Bar No. 14008
spayne@padrm.com
PIA ANDERSON DORIUS REYNARD & MOSS
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 350-9000
Facsimile: (801) 350-9010

Elizabeth L. DeRieux
State Bar No. 05770585

ederieux@capshawlaw.com
CAPSHAW DERIEUX, L.L.P.
114 East Commerce Avenue
Gladewater, Texas 75647
Telephone: (903) 845-5770

*Attorneys for Plaintiff*