**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| MY HEALTH, INC.<br><br>v.<br><br>ALR TECHNOLOGIES, INC. | CASE NO. 2:16-cv-00535 (LEAD) |

**DEFENDANTS' REPLY TO MICHAEL EIFFERT'S RESPONSE**
**TO DEFENDANTS' MOTION FOR CONTEMPT (DKT. NO. 137)**

My Health is Dr. Eiffert, and Dr. Eiffert is My Health. Yet, in his response (Dkt. No. 138), Dr. Eiffert now brazenly tries to distance himself from his empty shell company My Health even though it is manifest that it was he, along with his counsel ("the Pia Firm"), who engaged in the misconduct that this Court found to be exceptional (Dkt. No. 131).

And now there is more. Although Defendants' Motion for Contempt was precipitated by My Health's admitted failure to comply with the Court's Fees Order (Dkt. No. 131), that failure along with My Health's claim now that it is unable to pay, reveals further sanctionable misconduct stemming from My Health's earlier representations to the Court.[1] Specifically, My Health repeatedly told the Court in no uncertain terms that it would be able to pay the amount Defendants' sought in their 35 U.S.C. § 285 motion (Dkt. No. 81) and that there would be no harm to Defendants were that motion stayed. Dkt. No. 89 (May 1, 2017 My Health Motion For Stay Pending Appeal), at 1 (expressly acknowledging that Defendants were "seeking to collect over $370,000"), 3 ("***no harm will come*** by deferring consideration of Certain Defendants' Fees Motions") (emphasis added), 7 ("***Certain Defendants will not be harmed*** by the issuance of the Stay. ***There is no . . . basis to allege that My Health will be unable to pay an award of reasonable attorneys' fees*** . . . .") (emphasis added).

These representations are directly attributable to Dr. Eiffert, the real and sole actor behind My Health, and the Pia Firm. Thus, either My Health in reality did not have the money then and intentionally misled the Court in hope that the fees motion would be stayed and the § 285 issues

---

[1] Dr. Eiffert's argument that Defendants' Motion for Contempt is one year late is unreasonable. Dkt. No. 138, at 4-5. First, Fed. R. Civ. P. 54(d)(2)(E) specifically provides that the 14-day period in subsection (B) "do[es] not apply to claims for fees and expenses as sanctions for violating these rules." Second, even if subsection (B) applies, it states a "court order" can specify the timing for fees proceedings. Third, Dr. Eiffert's position would lead to the impractical result that fees could not be sought for misconduct occurring after 14 days from the judgment forming the initial basis for fees. Here, Defendants' Motion for Contempt was quickly filed 7 days after My Health allowed the Fees Order payment deadline to come and pass without taking any action, which is when My Health's deceit in its prior representations to the Court became manifest.

1

would dissipate. Or My Health had the money, but in attempt to shield itself from liability in the face of a fees order, improperly transferred and transacted against My Health's assets (and increased its liabilities) so that it could – like it has now – claim an inability to pay.[2] Either course is contemptible, and the latter could be illegal.

As the Court is aware, My Health has extracted at least ~$2.5 million in settlements over the course of its serial litigation campaign and sought over $2 million in settlements from Defendants. Indeed, My Health previously represented that it was sufficiently capitalized to pay the sought fees award. *Id.* Further, as an officer of the Court, Mr. Pia was obligated under Rule 11 to confirm that that statement was true (indeed, the sought stay relief was predicated on that affirmation). In light of this, Defendants did not at that time seek to join Dr. Eiffert and the Pia Firm as parties. But in view of the wrongdoing revealed above in connection with My Health's failure to comply with the Court's Fees Order, Dr. Eiffert and the Pia Firm should be joined.

**I.      My Health = Dr. Eiffert**

In his response, Dr. Eiffert simply dismisses Defendants' statements about him being the key corporate principal behind My Health's litigation as "conclusory." Dkt. No. 138, at 7. ***But Dr. Eiffert cannot refute those conclusions.*** At every chance, Dr. Eiffert has been championed as the face and driver of this litigation. *See, e.g.*, Dkt. No. 1 (Complaint against ALRT), ¶¶ 3, 8; Dkt. No. 34 ("Dr. Eiffert is the CEO of My Health and is internationally recognized for his advances in healthcare communication."); Dkt. No. 90 (My Health's patent assertion decisions made by "Dr. Eiffert and My Health's legal counsel"); Dkt. No. 90, Decl. of Dr. Eiffert, ¶¶ 29-36 (attesting to involvement in patent assertion decisions, and settlement discussions and amounts); Aug. 15, 2017 Hearing Tr., 29:16-21 (on looking for infringing activity, [MR. PIA:] "it really

---

[2] Suspicions raised by My Health's inability to pay claim will be discussed in Defendants' Reply to My Health's Response to Defendants' Motion for Contempt.

wasn't us as much as it was Dr. Eiffert"), 34:3-12 ("THE COURT: And [Dr. Eiffert] continues to be the sole owner [of My Health]?; MR. PIA: *And he is still to this day the sole owner.*; He's a practicing physician, but *he's also running this company* . . . .") (emphasis added), 35:9-22 (referring to My Health's litigation/settlement activities, [MR. PIA:] "And so Dr. Eiffert has – yes, he's maintained this company."), 35:23 – 36:12 ([MR. PIA:] "[Dr. Eiffert] had sought to enforce this patent."; "he asked us to file a notice of appeal [of the Court's § 101 decision]"; "he also asked us to stay this proceeding pending the outcome of that appeal"; "he abandoned the appeal"); Dkt. No. 141, Exhibit B to Ex. 1 (showing Dr. Eiffert as My Health credit card account holder[3]).[4] Moreover, in his response, Dr. Eiffert does not argue that he remained separate from My Health – *e.g.*, by showing My Health observed corporate formalities.

Thus, it is beyond dispute that Dr. Eiffert is the real actor behind My Health. Based on his extensive involvement (cited above), it is evident that the Court's Fees Order found exceptional various conduct directly attributable to Dr. Eiffert. *See, e.g.*, Dkt. No. 131, at 8 (finding it should have been clear to "any litigant" when these cases were filed that My Health's patent was "manifestly directed to an abstract idea"), 11-12 (finding "troubling" that My Health dismissed the appeal on the § 101 decision after its motion to stay Defendants' § 285 motion pending that appeal was denied), 10 (finding "My Health was filing lawsuits 'for the sole purpose of forcing settlements, with no intention of testing the merits of the claims'") (citations omitted).

## II.     Dr. Eiffert Should Be Joined And Held Liable Under 35 U.S.C. § 285

My Health's violation of the Court's Fees Order, and its most recent claim that contrary

---

[3] "A. Hoyt" is also shown as an authorized user of the My Health credit card. That appears to refer to Adam Hoyt, a named partner at the Pia Firm.

[4] The arrangement between My Health, Dr. Eiffert, and the Pia Firm is strikingly similar to that between the Pia Firm, its client SyncPoint, and SyncPoint's alleged alter ego Mr. Karl Hansen, as described in the pending § 285 motion filed in *SyncPoint Imaging, LLC v. Nintendo of America Inc., et al.*, No. 2:15-cv-00247-JRG-RSP, Dkt. No. 297 (E.D. Tex. Feb. 26, 2018).

to its earlier representation to the Court it is unable to pay, exposes Dr. Eiffert's scheme to use the My Health shell to sue and extract settlements from litigations in this District while trying to ensure no consequences for misconduct. As Judge Gilstrap has made clear, this behavior should not be condoned. *Iris Connex, LLC v. Dell, Inc.*, 235 F.Supp.3d 826, 860 (E.D. Tex. 2017) ("one cannot abuse the judicial process through the creation of shell entities to facilitate the assertion of otherwise meritless claims as part of a scheme to avoid the risks that Section 285 creates").

For the reasons discussed above, namely My Health's signed representations that it would be able to pay a fees award, Defendants reasonably believed that Dr. Eiffert had sufficiently capitalized My Health. But those misrepresentations, or the possibility that money from My Health was improperly conveyed before and/or after the Court's Fees Order, warrant that Dr. Eiffert be joined. *See id*. at 844 ("These cases all recognize a more general and uncontroversial principle: that the corporate form cannot be used as a shield to insulate officers and parent corporations against liability ***for their own tortious conduct or tortious conduct they control***.") (emphasis added); *Walker v. Federal Deposit Insurance Corp.*, 970 F.2d 114, 122 (5th Cir. 1992) ("If a corporate officer knowingly participates in a tortious act, there is no need to pierce the corporate veil in order to impose liability"). If liability "can be side-stepped by use of an empty shell to front for the real actor, simply because the real actor was not originally named as the plaintiff, then Section 285 means nothing." *See Iris Connex*, 235 F.Supp.3d at 845.

With respect to Dr. Eiffert's concerns about due process (Dkt. No. 138, at 5-6), putting aside that he as My Health's alter ego zealously defended against Defendants' fees motion and that ***Dr. Eiffert submitted a declaration in his name*** (Dkt. No. 90), Dr. Eiffert is being afforded due process here. Defendants have requested that Dr. Eiffert be joined, to which Dr. Eiffert has retained his own counsel, filed a response to Defendants' request, and will have the opportunity to be heard at the March 27, 2018 hearing. Thus, Dr. Eiffert will have been afforded due process

sufficient to render him liable under § 285. *See Iris Connex*, 235 F.Supp.3d at 843. The *Nelson* case cited by Dr. Eiffert is unavailing in the instant circumstance. Dkt. No. 138, at 5-6. In *Nelson*, the Supreme Court held the district court erred by simultaneously adding Nelson and subjecting him to the earlier issued fees order without giving Nelson "an opportunity to respond and contest his personal liability." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 463 (2000); *id*. at 472 ("Our decision ***surely does not insulate*** Nelson from liability.") (emphasis added). Here, Dr. Eiffert has been afforded and taken the opportunity to be heard. *See* Dkt. No. 138.

### III. This Court Should Enforce Its Order

The Court's Fees Order has not been stayed or overturned – rather, My Health sits in blatant violation of it. Prior to that violation, My Health, under control of Dr. Eiffert, made no attempt to apprise the Court that it would be unable to pay the award. And now, in yet another sign of defiance of this Court, Dr. Eiffert asserts that My Health's notice of appeal has robbed the Court of the ability to enforce its Fees Order. Dkt. No. 138, at 3. But Fed. R. Civ. P. 62(a) specifically provides that a Court can enforce its judgment if not stayed, and that enforcement can be through contempt under Fed. R. Civ. P. 70(e).

Further, the Court's power extends to non-parties. *See Iris Connex*, 235 F.Supp.3d at 858 ("The Court has the inherent power to sanction conduct . . . The inherent power allows the Court to sanction non-parties . . . closely tied to the litigation . . . For example, '[a] court may sanction a non-party corporate officer who acts improperly on behalf of a corporate defendant and who attempts to avoid sanctions by hiding behind the corporate veil.'") (citations omitted). Here, the Court can exert its inherent power, find contempt, and attach joint and several liability to My Health's alter ego Dr. Eiffert. That would not interfere with the Federal Circuit's authority or the rights of My Health in its pending appeal on the Fees Order. Moreover, in that scenario, Dr. Eiffert would be free to appeal and seek consolidation with My Health's pending appeal.

Dated: March 19, 2018

Respectfully submitted,

By: /s/ *Wasif H. Qureshi*
Wasif H. Qureshi
Texas State Bar No. 24048155
wqureshi@jw.com
Blake T. Dietrich
Texas State Bar No. 24087420
bdietrich@jw.com
**JACKSON WALKER LLP**
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4521

**COUNSEL FOR DEFENDANTS ALR TECHNOLOGIES, INC., INTOUCH TECHNOLOGIES, INC., MYNETDIARY, INC., AND MCKESSON TECHNOLOGIES INC.**

"J" Jackson Shrum
jshrum@jshrumlaw.com
**AUSTRIA SHRUM, LLC**
1201 North Orange Street, Suite 502
Wilmington, DE 19801
Telephone: 302-543-7551

**COUNSEL FOR DEFENDANT MYNETDIARY, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 19, 2018 the foregoing document and accompanying papers were served on all counsel of record via the Court's electronic filing system.

/s/ *Wasif Qureshi*
Wasif Qureshi