**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **MY HEALTH, INC.**<br><br>**v.**<br><br>**ALR TECHNOLOGIES, INC.** | **CASE NO. 2:16-cv-00535 (LEAD)** |

**DEFENDANTS' REPLY TO MY HEALTH'S RESPONSE (DKT. NO. 140)
TO DEFENDANTS' MOTION FOR CONTEMPT (DKT. NO. 137)**

In the eleven months between when Defendants filed their § 285 Motion (Dkt. No. 81) and My Health filed its Response (Dkt. No. 140) to Defendants' Motion for Contempt (Dkt. No. 137), ***not once*** did My Health signal to the Court that it would be unable to pay the fees award (My Health actually said the opposite). Rather, My Health vigorously defended against Defendants' § 285 motion, consuming valuable Court resources in reviewing numerous filings, holding a hearing, and issuing orders (*e.g.*, Dkt. Nos. 98, 118, 131). Even during the 60-day compliance period set in the Court's Fees Order (Dkt. No. 131), My Health never came to the Court to claim an inability to pay in hope to stay that order. Now, and only after Defendants filed their Motion for Contempt calling out My Health's flouting of the Fees Order, My Health defiantly claims that the Court's hands are tied on doing anything further. As such, My Health's Response further crystallizes My Health's abuse and contempt of the litigation process.

***And My Health's misrepresentations to the Court continue to this day.*** In its Response, My Health incredibly states that My Health's May 1, 2017 representation that it could pay the sought fees (Dkt. No. 89, at 7) was based on an "undefined . . . obligation[ ]" "since the amount of fees was not established." Dkt. No. 140, at 2, 5. ***But that is directly contrary*** to what My Health said in that same filing: on page 1, ***My Health expressly acknowledged that Defendants were "seeking to collect over $370,000."*** Dkt. No. 89 (My Health Motion For Stay Pending Appeal), at 1. My Health's attempt now to cast its prior representation as old and meaningless reeks of bad faith and litigation misconduct, especially given that My Health based the sought relief in its stay motion on its ability to pay. *Id*. at 3 ("***no harm will come*** by deferring consideration of Certain Defendants' Fees Motions") (emphasis added), 7 ("***Certain Defendants will not be harmed*** by the issuance of the Stay. ***<u>There is no . . . basis to allege that My Health will be unable to pay an award of reasonable attorneys' fees</u>*** . . . .") (emphasis added). My Health's continued transgressions, especially on the heels of admittedly violating court order, warrant it be held in contempt.

1

I.      **My Health's Inability To Pay Claim Is Deficient And Suspicious**

Despite not having apprised the Court prior to the Fees Order compliance deadline, and not having sought a waiver of a superseadeas bond under Fed. R. Civ. P. 62 to stay enforcement of the Fees Order pending appeal,[1] My Health now conveniently claims that it cannot be held in contempt because it cannot pay the fees award.[2] Dkt. No. 140, at 4-5. Not only is My Health's claim deficient, it raises serious questions that require scrutiny by the Court.

The burden to provide inability to pay is on My Health. *See Rylander*, 460 U.S. at 757. And where, as here, there has been no meaningful attempt to Comply with the Fees Order, My Health must show "a complete inability to pay" – in other words, My Health has the burden of establishing "clearly, plainly, and unmistakably " that "compliance is impossible." *In re Tech. Corp.*, 624 F.3d 376, 387 (7th Cir. 2010) (quoting *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). My Health has greatly failed in meeting this burden.

My Health's "proof" boils down to a redacted checking account printout showing a balance dated March 14, 2018[3] and a My Health credit card statement showing a balance dated March 13, 2018.[4] Dkt. No. 141 (sealed), Exhs. A and B to Exh. 1 to Dkt. No. 140. Defendants submit these are

---

[1] Indeed, two weeks prior to the Fees Order deadline, Defendants reminded My Health that it needed to comply with Fed. R. Civ. P. 62 – to which My Health never responded or took other action. Dkt. No. 137-1, at 1 (to Mr. Pia: "you have not come forward with a proposal for the amount of the appeal bond My Health is required to post. Please do so promptly. In order to stay the district court's § 285 / fees order, you need to escrow an acceptable appeal bond amount, and absent such, we will seek to enforce the district court order in addition to seeking other relief").

[2] My Health's inability to pay cannot be used to attack the Court's Fees Order. *See U.S. v. Rylander*, 460 U.S. 752, 756-57 (1983) ("It would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.") (citing *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948)).

[3] The printout out indicates a print date of "3/13/2018" although it purports to show a balance "available as of today 03/14/2018."

[4] "A. Hoyt," in addition to Dr. Eiffert, is shown as an authorized user of the My Health credit card. That appears to refer to Adam Hoyt, a named partner at the Pia Firm.

meaningless and suggest deceit. The meager "records" do not come close to showing My Health's balances on any of the days when Defendants filed their § 285 motion (Dkt. No. 81), My Health told the Court that it could pay the sought fees (Dkt. No. 89), the Court issued its Fees Order (Dkt. No. 131), or the period between when the Fees Order issued and the compliance period ended on February 20, 2018. The purported balances are dated three weeks after the February 20, 2018 deadline.[5] Moreover, My Health provides no transaction history in its exhibits. It would be easy to charge up a credit card and show the resulting balance as a high liability. Nor does Dr. Eiffert's declaration (Dkt. No. 141, Exh. 1 to Dkt. No. 140) clearly state that the shown checking and credit card accounts are the only financial accounts My Health has, either in its name or Dr. Eiffert's. All this is dubious and appears to be an effort to pull the wool over the Court's eyes.

My Health's failure to plainly prove its inability to pay is exacerbated by its above-discussed representations that it could pay the fees award. Additionally, if My Health no longer has the at least ~$2.5 million received in prior settlement payments,[6] then – as called out above – it appears that Dr. Eiffert, as its sole owner and shareholder, depleted My Health's "assets" and placed those funds in account(s) not bearing the My Health name. In other words, the earlier representations made by My Health, Dr, Eiffert, and the Pia Firm as to My Health's settlement/licensing revenues and ability to pay the fees award suggest that Dr. Eiffert transferred My Health's funds to himself (or elsewhere) knowing that My Health's funds would otherwise be directly subject to satisfying the Court's Fees Order. Any such transfers would be fraudulent under both state and federal law.

---

[5] The discussion in My Health's Response that the February 20, 2018 compliance deadline is the date on which ability to pay should be measured is unreasonable. My Health knew on December 20, 2017 that it was under court order to pay the fees award. Any movement of assets and liabilities especially between that date and February 20, 2018 for the purpose of My Health wanting to later be able to claim an inability to pay is against the law and further evidence of My Health's, Dr. Eiffert's, and the Pia Firm's contemptible conduct in this litigation.

[6] Defendants say "at least" because My Health defied prior Court order to submit "all" agreements – My Health only submitted less than half of its settlement/license agreements. Dkt. No. 137, at 5.

Further, as called for in view of My Health's Response and accompanying financial "records," Defendants believe the Court should compel production of full financial records associated with money received or spent by My Health in connection with its litigation campaign or for other purposes, at least going back to when Defendants filed their § 285 motion.[7]

## II. This Court Can Enforce Its Order Through Contempt

The Court's Fees Order has not been stayed or overturned – rather, My Health sits in blatant violation of it. Prior to that violation, My Health made no attempt to inform the Court that it would be unable to pay. And now, in yet another sign of defiance of this Court, My Health argues that the Court cannot enforce its Fees Order through contempt. Dkt. No. 140, at 3-4.

Specifically, My Health argues that the Court's fees award is a money judgment that can only be enforced through a writ of execution under Fed. R. Civ. P. 69(a). This argument should be rejected for a number of reasons. First, the Court's fees award was not simply due to My Health having a weak substantive position regarding its asserted patent. Rather, the Court found numerous instances of misconduct by My Health, including under Rule 11. *See* Dkt. No. 131, at 12. Thus, the nature of the fees award at least in this case is of a sanction, not an ordinary money judgment. *See, e.g.*, *See Cleveland Hair Clinic, Inc. v. Puig*, 106 F.3d 165, 166 (7th Cir. 1997) ("contempt power is an appropriate way to enforce a sanction for misconduct, which is not an ordinary money judgment."); *Alpern v. Lieb*, 11 F.3d 689, 690 (7th Cir. 1993) ("[Rule 11] directs the imposition of sanctions for unprofessional conduct in litigation, and while the form of sanction is often and was here an order to pay attorney's fees to the opponent in the litigation, it is still a sanction . . . .").

Further, even if the fees award is deemed a money judgment subject to Fed. R. Civ. P. 69(a), that rule specifically provides that the Court can direct that the judgment be enforced apart from a

---

[7] Such records would also presumably show whether Dr. Eiffert and/or the Pia Firm comingled their money with My Health's funds, which could further evidence their joint and several liability.

4

writ of execution – for example, through contempt under Fed. R. Civ. P. 70(e). Although My Health argues that Rule 69(a)'s "unless the court directs otherwise" language should be construed narrowly (Dkt. No. 140, at 4), Defendants submit that this case – rampant with My Health's countless misrepresentations and instances of litigation misconduct, including the above-discussed suspicious attempt to show an inability to pay – is not just exceptional as the Court has already declared, but extraordinary as to My Health's misconduct. *See Gates v. Collier*, 616 F.2d 1268, 1271-72 (5th Cir. 1980) ("Here, the district court acted well within its authority to ensure compliance with its lawful orders. If statutory authority is needed for the court's actions, it may be found in Fed. R. Civ. P. 70. The defendants have made it abundantly clear that they intend to resist the judgment until the bitter end. Given such obstinance, we think it beyond peradventure that the remedy fits the wrong.").

### III. Defendants Repeatedly Attempted To Confer With My Health Despite My Health's Bad Faith And Non-Response

Despite My Health's prior meet-and-confer misrepresentations to Defendants and about Defendants' positions to the Federal Circuit (*see, e.g.*, Dkt. No. 137, at 5), the undersigned still on multiple occasions reached out to Mr. Pia seeking resolution of the Fees Order. *See* Exh. A[8], at 3 (bottom). And Defendants made clear that they would seek relief for violation of the Fees Order. *Id*. at 6 ("we will seek to enforce the district court order in addition to seeking other relief"). My Health never responded and let the Fees Order compliance deadline pass. *Id*. at 3. Now, while having basically ignored Defendants' overtures prior to the compliance deadline, My Health incredibly claims that it was not conferred about Defendants' Motion for Contempt. And still, even though Defendants disagreed, the undersigned offered to talk by phone with Mr. Pia and potentially withdraw its motion – My Health never called. *Id*. at 4. Instead, Mr. Pia audaciously demanded that the motion be withdrawn before My Health would talk about doing what the Court had already ordered My Health to do. *Id*. at 1, 3.

---

[8] My Health's Response at Dkt. No. 140-1 does not provide the complete e-mail chain.

Dated: March 20, 2018

Respectfully submitted,

By: /s/ *Wasif H. Qureshi*
Wasif H. Qureshi
Texas State Bar No. 24048155
wqureshi@jw.com
Blake T. Dietrich
Texas State Bar No. 24087420
bdietrich@jw.com
**JACKSON WALKER LLP**
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4521

**COUNSEL FOR DEFENDANTS ALR TECHNOLOGIES, INC., INTOUCH TECHNOLOGIES, INC., MYNETDIARY, INC., AND MCKESSON TECHNOLOGIES INC.**

"J" Jackson Shrum
jshrum@austriashrum.com
**AUSTRIA SHRUM, LLC**
1201 North Orange Street, Suite 502
Wilmington, DE 19801
Telephone: 302-543-7551

**COUNSEL FOR DEFENDANT MYNETDIARY, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 20, 2018 the foregoing document and accompanying papers were served on all counsel of record via the Court's electronic filing system.

/s/ *Wasif Qureshi*
Wasif Qureshi