IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **MY HEALTH, INC.**<br><br>**v.**<br><br>**ALR TECHNOLOGIES, INC.** | **CASE NO. 2:16-cv-00535 (LEAD)** |

**DEFENDANTS' REPLY TO THE PIA FIRM'S RESPONSE (DKT. NO. 139)**
**TO DEFENDANTS' MOTION FOR CONTEMPT (DKT. NO. 137)**

The Pia Firm's individual and complicit misconduct in this litigation has been spelled out and is incorporated here. *See, e.g.*, Dkt. Nos. 81, 97, 106, 124, 131, 137, 144, 145. From early on, when it repeatedly and knowingly contacted represented parties despite warning (Dkt. No. 131, at 11), throughout the case with numerous instances of misrepresentations and misconduct (*see, e.g.*, Dkt. No. 137, at 5), to even now in brazenly representing to the Court that the fees amount was "undefined" when it previously told the Court My Health could pay (Dkt. No. 145, at 1), the Pia Firm has litigated with an attitude of no accountability. And now, in its Response, the Pia Firm, like My Health and Dr. Eiffert, attempts to escape liability and sanction for its bad faith and misconduct.

## I. The Pia Firm Should Be Made Jointly And Severally Liable Under 28 U.S.C. § 1927

As discussed in Defendants' Motion for Contempt and replies in support thereof, the Pia Firm's conduct to frustrate compliance with the Court's Fees Order, disregard of its duty as an officer of the Court to at minimum notify the Court of My Health's inability to pay prior to violating that order, and continued misrepresentations confirm its liability under 28 U.S.C. § 1927.

In its Response, the Pia Firm argues that Defendants have not shown that the Pia Firm's bad faith and misconduct infected every part of this case. That is far from true. Foremost, the Court, in its Fees Order, has already found regular acts by the Pia Firm (from the very start of the case) to be exceptional, beyond unreasonableness. *See generally* Dkt. No. 131 (referring to "My Health's counsel" in connection with various instances of misconduct beginning from the outset of this case).

The Pia Firm dedicates much of its Response to arguing that because § 101 law was unclear, there was no unreasonable multiplication of the proceedings and thus that dispenses the Pia Firm's liability. But in the attempt to re-argue its § 101 position, the Pia Firm does not mention that the Court already ruled in its Fees Order that by the time this case was brought, "***any litigant***" should have known that the asserted patent was "***manifestly directed to an abstract idea***." Dkt. No. 131, at 8 (emphasis added). The Court went further to state that "[t]here was ***no credible argument*** that the '985 patent claims fell into one of the eligible exceptions defined in cases such as *Enfish*." *Id.*

1

(emphasis added).

Indeed, despite the Pia Firm's attempt to rewrite history and argue that § 101 law is "too inconsistent and contradictory," this Court made crystal clear in its § 101 decision that "[o]n its face, [asserted] claim [1] is ***unquestionably 'abstract'*** within the meaning of *Alice* because the claim itself does not even recite a hardware or software component." Dkt. No. 66, at 3 (emphasis added). The Court went as far as to state that "it is clear that claim 1 of the '985 patent – particularly when compared to the claim at issue in *SmartGene* – ***does not come close*** to the subject-matter eligibility threshold." Dkt. No. 78, at 6. And even further, this Court repeatedly stated that My Health's positions with respect to § 101 eligibility of the asserted patent were "***implausible***," not legitimate arguments as the Pia Firm tries to characterize in its response. Dkt. No. 78, at 4-5, n.4 (emphasis added); Dkt. No. 66, at 6.

Thus, the Court could not have made it any clearer that My Health's litigation strategy and position was patently meritless from the outset of its litigation campaign against Defendants. And it was incumbent on the Pia Firm to prevent such bad faith litigation having only the motive to secure settlements. Dkt. No. 131 (Court: "My Health was filing lawsuits 'for the sole purpose of forcing settlements, with no intention of testing the merits of [the] claims.'").

Moreover, had the Pia Firm not misrepresented to the Court that My Health would be able to pay the fees award – or alternatively, timely notified the Court of My Health's financial position – the proceedings since at least May 2017 could have been lessened. It would be hard to believe that the Pia Firm did not know or at least have an idea of the assets of My Health given the likelihood that the Pia Firm was representing My Health on contingency.[1,2]

---

[1] Indeed, the purported My Health credit card statement (Dkt. No. 141, Exh. B to Exh. 1 to Dkt. No. 140) shows "A. Hoyt," in addition to Dr. Eiffert, as an authorized user of the My Health credit card. That appears to refer to Adam Hoyt, a named partner at the Pia Firm.

[2] Defendants note that in another case in this Court in which fees have been sought against the Pia Firm, it is alleged that the Pia Firm had a 60% contingency interest in the outcome of that case

In another example, while demanding an almost $1 million settlement from Defendant McKesson Technologies, the Pia Firm never substantively responded when the undersigned specifically complained to Mr. Pia that the accused McKesson product was purchased from a My Health licensed entity. Dkt. No. 131, at 5. Indeed, My Health's own infringement contentions against McKesson – which presumably formed the basis for My Health's suit against McKesson – clearly showed that the accused McKesson product was specifically identified in an earlier lawsuit by My Health against Bosch, which settled with My Health and supplied the licensed product to McKesson. Dkt. No. 81, at 6.

Thus, the facts underlying the Pia Firm's unreasonable and vexatious multiplication of the proceedings – including as to its reckless disregard of the duty owed to the Court in asserting a patent that was "manifestly" and "unquestionably" abstract – in this case have already been found.

## II. The Pia Firm Is Liable For § 285 Exceptional Conduct Found In This Case, And For Misconduct In Connection With Recent Violation Of Court Order

The Pia Firm argues that the Court cannot amend its Fees Order because My Health has filed a notice of appeal. Dkt. No. 139, at 2-3. Defendants disagree because attaching the Pia Firm as joint and severally liable for the § 285 fees award does not interfere with the Federal Circuit's authority or rights of My Health in its pending appeal. It is abundantly clear that exceptional conduct found in the Fees Order is directly attributable to the Pia Firm. Nonetheless, even if the Court desires not to amend the Fees Order, it has a number of other options to attach liability to the Pia Firm for its misconduct. For example, it can issue a new order, and to the extent the Pia Firm wants to appeal that order, the Pia Firm can so appeal and seek consolidation with My Health's pending appeal. Additionally, the Court can and should attach liability to the Pia Firm under 28

---

involving an empty shell plaintiff like what My Health now appears to have been. *SyncPoint Imaging, LLC v. Nintendo of America Inc., et al.*, No. 2:15-cv-00247-JRG-RSP, Dkt. No. 297, at 26 (E.D. Tex. Feb. 26, 2018).

U.S.C. § 1927 as discussed above and in Defendants' Motion for Contempt. The Court can also sanction the Pia Firm under Rule 11 for its now apparent misrepresentations to the Court that My Health would be able to pay the fees award. And, of course, the Court can exert its inherent power, and attached the Pia Firm as jointly and severally liable in connection with the contemptible conduct relating to the Fees Order and its prior bad faith and litigation misconduct.

The Pia Firm also argues that § 285 does not allow for the liability of a fees award to be imposed on litigation counsel. Dkt. No. 139, at 3. If that were true, that would render meaningless much of Judge Gilstrap's § 285 analysis in *Iris Connex*. In other words, the Pia Firm seeks a result that it be untouchable and free to litigate in any manner that otherwise – if carried out by anyone else – would be sanctionable under § 285. That is clearly not what Judge Gilstrap intended. *See Iris Connex, LLC v. Dell, Inc.*, 235 F.Supp.3d 826, 845-46 (E.D. Tex. 2017) (stating that Section 285 should not be read to "perversely" inventive[ ] third parties [like the Pia Firm] to act in ways" that the statute was meant to deter). Moreover, the fact that Judge Gilstrap did not impose § 285 liability on plaintiff's counsel in *Iris Connex* (and instead imposed a sanction under Rule 11) was not because Judge Gilstrap generally said § 285 fees liability could not be levied on counsel. Rather, Judge Gilstrap was assessing the specific facts in that case in which he defined the sanction of plaintiff's counsel's as limited to advancing a weak claim construction position. Here, the Pia Firm's misconduct is far more rampant and varied than plaintiff's counsel's objective unreasonableness in *Iris Connex*.

Regarding timeliness (Dkt. No. 139, at 4), the Pia Firm's argument that Defendants' Motion for Contempt is one year late is unreasonable. First, Fed. R. Civ. P. 54(d)(2)(E) specifically provides that the 14-day period in subsection (B) "do[es] not apply to claims for fees and expenses as sanctions for violating these rules," which rules have been violated by the Pia Firm and Dr. Eiffert. Second, even if subsection (B) applies, it states a "court order" can specify the timing for fees proceedings. Third, the Pia Firm's position would lead to the impractical result that fees could

4

not be sought for misconduct occurring after 14 days from the judgment forming the initial basis for fees. Here, Defendants' Motion for Contempt was quickly filed 7 days after the Pia Firm allowed the Fees Order payment deadline to come and pass without taking any action, which is when the Pia Firm's deceit in its prior representations to the Court became manifest. Indeed, prior to those misrepresentations becoming apparent only after My Health filed its response to the Defendants' Motion for Contempt, the Pia Firm on behalf of My Health represented to the Court that My Health could pay the fees award.

### III.    The Pia Firm Should Be Sanctioned Under Rule 11

In its Response, the Pia Firm – in another misrepresentation – states that "[t]he Court's § 285 Fee Order does not even mention Rule 11." Dkt. No. 139, at 6. That is not true. On page 12 of the Fees Order, the Court expressly cites to "Fed. R. Civ. P. 11(b)" as requiring "when an attorney signs a motion, he represents to the best of his knowledge that the contentions being presented to the Court are accurate." Dkt. No. 131, at 12. And in view of that Rule 11 requirement, the Court found "***My Health's counsel***" to have made a misrepresentation to the Federal Circuit that "appears to have been untrue." *Id*. (emphasis added).

The Pia Firm's false statements in filings with the Court (and the Federal Circuit) have been called out time and time again. *See, e.g.*, Dkt. No. 131, at 6, 12 (Court finding "questionable avoidance tactics" with "My Health making representations [to the Court] to secure a delay in the hearing on Defendants' § 285 Motion based on of a conflict that was in fact no conflict at all."). Moreover, despite the Pia Firm's procedural complaints, Fed. R. Civ. P. 11(c)(3) provides that a Court can conduct Rule 11 proceedings "on its own" initiative.

### IV.    The Court Can And Should Use Its Inherent Power

As already discussed herein, and in Defendants' Motion for Contempt and sister replies in support thereof, it is evident that that the Pia Firm has acted in bad faith, vexatious, wantonly, and for oppressive reasons, thus warranting Defendants' sought relief under the Court's inherent power.

5

Dated: March 20, 2018

Respectfully submitted,

By: /s/ *Wasif H. Qureshi*
Wasif H. Qureshi
Texas State Bar No. 24048155
wqureshi@jw.com
Blake T. Dietrich
Texas State Bar No. 24087420
bdietrich@jw.com
**JACKSON WALKER LLP**
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4521

**COUNSEL FOR DEFENDANTS ALR TECHNOLOGIES, INC., INTOUCH TECHNOLOGIES, INC., MYNETDIARY, INC., AND MCKESSON TECHNOLOGIES INC.**

"J" Jackson Shrum
jshrum@austriashrum.com
**AUSTRIA SHRUM, LLC**
1201 North Orange Street, Suite 502
Wilmington, DE 19801
Telephone: 302-543-7551

**COUNSEL FOR DEFENDANT MYNETDIARY, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 20, 2018 the foregoing document and accompanying papers were served on all counsel of record via the Court's electronic filing system.

/s/ *Wasif Qureshi*
Wasif Qureshi