# EXHIBIT A

No. 18-1455

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

MY HEALTH, INC.,

*Plaintiff-Appellant,*

v.

ALR TECHNOLOGIES, INC., INTOUCH TECHNOLOGIES, INC., MYNETDIARY, INC.,
AND MCKESSON TECHNOLOGIES INC.,

*Defendants-Appellees.*

On Appeal from the United Stated District Court for the Eastern District of Texas
No. 2:16-cv-00535

## APPELLEES' MOTION TO DISMISS APPEAL DUE TO APPELLANT'S FAILURE TO COMPLY WITH DISTRICT COURT ORDER

_____

WASIF H. QURESHI
wqureshi@jw.com
BLAKE T. DIETRICH
dietrich@jw.com
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Tel: (713) 752-4200

*Counsel for Defendants-Appellees*

## APPELLEES' MOTION TO DISMISS APPEAL DUE TO APPELLANT'S FAILURE TO COMPLY WITH DISTRICT COURT ORDER

Pursuant to Federal Circuit Rule 27, Defendants-Appellees ALR Technologies, Inc., InTouch Technologies, Inc., MyNetDiary, Inc., and McKesson Technologies Inc. respectfully move to dismiss this appeal because Appellant My Health, Inc. ("My Health") (i) sits in violation of the District Court's attorneys' fees order ("Fees Order") on which this appeal is based and (ii) has failed to post the supersedeas bond required under Fed. R. Civ. P. 62 to stay the Fees Order. My Health should not be allowed to seek appeal when it openly flouts order and rule of the District Court, and accordingly this Court using its inherent power should dismiss My Health's appeal.

## I.    Background

1.      On December 20, 2017, the United States District Court for the Eastern District of Texas ("District Court") issued its Fees Order declaring My Health's cases against Defendants-Appellees in the District Court to be exceptional under 35 U.S.C. § 285 and requiring My Health to pay Defendants-Appellees' attorneys' fees "within 60 days." Dkt. 131 (Exh. A), pp. 13-14.[1]

2.      The 60-day deadline in the Fees Order has passed, and My Health to

---

[1] In briefing related to Defendants-Appellees' attorneys' fees motion in the District Court, My Health represented to the District Court that "there is no . . . basis to allege that My Health will be unable to pay an award of reasonable attorneys' fees." Dkt. No. 89 (Exh. B), at 7.

1

date has made no payment to Defendants-Appellees.

3.     My Health has failed to post the supersedeas bond required under Fed. R. Civ. P. 62 to stay the Fees Order pending appeal. Nor has My Health made any overture to the District Court or Defendants-Appellees regarding an alternative to having to post the bond.

4.     In view of My Health's failures set forth above, on February 27, 2018, Defendants-Appellees filed a Motion For Order To Show Cause Why My Health Should Not Be Held In Contempt Of Court ("Motion for Contempt"). Dkt. No. 137 (Exh. C).

5.     On the same day, the District Court issued a notice setting hearing on the Motion for Contempt for March 27, 2018. Exh. D.

## II.    Argument

It is indisputable that My Health sits in open and knowing violation of the Fees Order. And My Health has neither posted the required supersedeas bond to stay the Fees Order nor sought other relief from the District Court or this Court to prevent My Health from being in contempt of the Fees Order. Thus, My Health should not be allowed to, with right or reason, seek the assistance of this Court in hearing My Health's demands regarding the merits of the Fees Order while My Health stands in an attitude of refusal, defiance, and contempt of the District

2

Court.[2]

## III.    Conclusion

Accordingly, in view of the above, Defendants-Appellees request that this Court use its inherent power to dismiss My Health's appeal with prejudice. Alternatively, Defendants-Appellees request that My Health's appeal be dismissed without prejudice for reinstatement only after My Health is deemed to be in compliance with the Fees Order and any further order of this Court and the District Court.

### <u>Federal Circuit Rule 27(a)(5) Statement</u>

Counsel for Defendants-Appellees informed counsel for My Health that Defendants-Appellees would seek the relief sought herein and provided My Health an opportunity to provide its position. Having received no response from My Health prior to the filing of this motion, Defendants-Appellees view this motion to be opposed and expect My Health to file a response.

---

[2] This has been referred to in case law as the equitable doctrine of appellate disentitlement.

Dated:  March 13, 2018

Respectfully submitted,

*/s/ Wasif H. Qureshi*

WASIF H. QURESHI
wqureshi@jw.com
BLAKE T. DIETRICH
dietrich@jw.com
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Tel: (713) 752-4200

*Counsel for Defendants-Appellees*

## Certificate of Service

I hereby certify that on March 13, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system. Service of the foregoing document on counsel of record in this case will be accomplished by the CM/ECF system.

*/s/ Wasif H. Qureshi*
Wasif H. Qureshi

**FORM 9. Certificate of Interest**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

My Health, Inc.    v.    ALR Technologies, Inc., et al.

Case No. 18-1455

## CERTIFICATE OF INTEREST

Counsel for the:
☐ (petitioner) ☐ (appellant) ☐ (respondent) ☒ (appellee) ☐ (amicus) ☐ (name of party)

ALR Technologies, Inc.; InTouch Technologies, Inc.; MyNetDiary, Inc.; McKesson Technologies Inc.

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| ALR Technologies, Inc. | ALR Technologies, Inc. | None |
| InTouch Technologies, Inc. | InTouch Technologies, Inc. | None |
| MyNetDiary, Inc. | MyNetDiary, Inc. | None |
| McKesson Technologies Inc. | McKesson Technologies LLC | See Attachment A |
| | | |
| | | |
| | | |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court **(and who have not or will not enter an appearance in this case)** are:

None.

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b).  (The parties should attach continuation pages as necessary).

None (other than My Health, Inc. v. ALR Technologies, Inc., et al., Case No. 2:16-cv-00535 (E.D. Tex.), from which that court's order at Dkt. No. 131 is the subject of appellant's appeal).

| 3/13/2018 | /s/ Wasif Qureshi |
|---|---|
| Date | Signature of counsel |
| Please Note: All questions must be answered | Wasif Qureshi |
| | Printed name of counsel |

cc:   All counsel of record via CM-ECF

Reset Fields

Attachment A

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| McKesson Technologies Inc. | McKesson Technologies LLC | Change Healthcare LLC; McKesson Corporation (NYSE: MCK); Blackstone Group LP (NYSE: BX) |

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| My Health, Inc., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Case No. 2:16-cv-00535-RWS-RSP (Lead) |
| v. | § | |
| | § | |
| ALR Technologies, Inc., | § | |
| | § | |
| *Defendant.* | § | |

| | | |
|---|---|---|
| InTouch Technologies, Inc., | § | |
| | § | |
| | § | Case No. 2:16-cv-00536-RWS-RSP |
| *Defendant.* | § | |

| | | |
|---|---|---|
| MyNetDiary, Inc., | § | |
| | § | |
| | § | Case No. 2:16-cv-00866-RWS-RSP |
| *Defendant.* | § | |

| | | |
|---|---|---|
| McKesson Technologies Inc., | § | |
| | § | |
| | § | Case No. 2:16-cv-00881-RWS-RSP |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

In May 2016, My Health filed a number of patent infringement lawsuits in the district, and about ten months later, the Court declared the patent-in-suit (U.S. Patent No. 6,612,985) invalid for failure to claim patent-eligible subject matter as required by 35 U.S.C. § 101. Defendants' motions to dismiss were granted, and final judgment was entered. This outcome, in addition to My Health's extensive litigation campaign, the manner in which My Health litigated the cases, and the weakness of My Health's § 101 position, prompted the prevailing defendants to move for their attorneys' fees under 35 U.S.C. § 285. Dkt. No. 81. For the following reasons, the Court finds

1

My Health's cases exceptional, grants defendants' motion for fees, and orders My Health to pay $371,862.95 to the defendants.

## BACKGROUND

My Health's assertion of the '985 patent began in April 2012, with a lawsuit filed against ZeOmega Inc.[1] Although the lawsuit against ZeOmega remained pending for nine months, there was never a determination on the merits, and the parties settled in January 2013. *See id.*, Dkt. No. 59. My Health then sued five additional defendants in February 2013.[2] Aside from venue-related motions filed in three of these cases, there was no significant activity in the case, and no merits determination. One of the five defendants, Cadiocom, petitioned the Patent Trial and Appeal Board (PTAB) for inter partes review (IPR) of the '985 patent, and the PTAB instituted IPR, but My Health settled with Cardiocom before trial.[3]

My Health's litigation campaign continued through 2017. In total, My Health filed 31 lawsuits in the district. In addition to these lawsuits, parties that were either sued or threatened with suit filed eleven declaratory judgment actions in other districts. Of all these lawsuits, there was never a determination regarding the merits until 2017. In My Health's lawsuit against LifeScan in 2015, the Court denied a motion to dismiss because of an apparent need for claim construction in advance of determining whether the claims of the '985 patent are directed to patent-eligible subject-matter.[4] There was, however, no determination regarding whether the '985 patent claims were eligible under § 101.

---

[1] Case No. 2:12-cv-00251 (E.D. Tex.).
[2] Case Nos. 2:13-cv-00136, 2:13-cv-00137, 2:13-cv-00138, 2:13-cv-00139, and 2:13-cv-00140 (all E.D. Tex.).
[3] IPR2013-00320.
[4] *My Health, Inc. v. LifeScan, Inc.*, Case No. 2:14-cv-00683-RWS-RSP, Dkt. No. 34 (E.D. Tex.)

Aside from the district court actions, there were five petitions for IPR, all of which settled before trial. The PTAB granted IPR on all the petitions that made it to the point of an institution decision, but a trial was never held. Other IPR petitions were dismissed before an institution decision was made.

The district court cases and the IPR proceedings all ended with settlement. Some of My Health's settlement agreements, which were produced for *in camera* review, *see* Dkt. No. 118, reveal a median settlement amount of about $50,000. The earlier agreements were for significantly higher amounts than the later ones. In the lawsuits filed before 2014—before the Supreme Court's decision in *Alice Corporation Pty. v. CLS Bank International*, 134 S. Ct. 2347 (2014), was fully understood—the median settlement amount was $240,000. That median value dropped to $42,500 in cases filed in 2014 and after. Of the seventeen settlement agreements reached after 2014, ten of them fell between $25,000 and $50,000, and most of them were around $30,000. Three of the agreements—involving different defendants—were all for exactly $30,000.

There is not much of a behind-the-scenes view between 2012 and 2014, but there is evidence in the record regarding My Health's litigation behavior in the cases filed in 2016. The dispute with ALR Technologies ("ALRT"), for example, began with a cease and desist letter from Patent Licensing Alliance ("PLA"), My Health's licensing affiliate, asking ALRT to stop infringing the '985 patent. Dkt. No. 81-7. ALRT responded with a letter from counsel explaining its belief that the '985 patent was invalid under *Alice*. Dkt. No. 81-8. My Health did not respond but eventually sued ALRT. Despite My Health's knowledge that ALRT was represented by counsel, My Health's counsel sent a letter directly to ALRT's CEO after filing the lawsuit. The letter explained, among other things, that My Health will "remain open and willing to explore an early resolution that would conclude the legal proceedings." Dkt. No. 81-18.

3

InTouch Technologies received a similar letter after My Health sued them. Dkt. No. 81-20. Counsel for InTouch responded with a letter explaining, among other things, that My Health was improperly reading the '985 patent to cover "physician consultations and decisions" made by a doctor, which according to InTouch, "reinforces the unsupportable and unpatentable claim breadth My Health is advancing." Dkt. No. 81-9. My Health did not respond. My Health did, however, continue to make settlement demands.

Like ALRT, MyNetDiary also received a cease and desist letter from PLA before being sued. Dkt. No. 81-19. MyNetDiary's counsel responded with a detailed letter explaining how "virtually all of the applications" mentioned in the cease and desist letter "are not covered or used by MyNetDiary's technology or its customers." Dkt. No. 81-12 at 3. The letter also asked My Health to "please make certain that any and all future correspondence, if any, with MyNetDiary is directed solely to us as the attorneys for MyNetDiary." *Id.* at 5. Despite this request, PLA again sent a letter directly to MyNetDiary's CEO expressing My Health's desire for an "amicable licensing arrangement." Dkt. No. 81-14 at 1.

The letter to MyNetDiary was not taken lightly. MyNetDiary's counsel responded to My Health's counsel with an email in January 2016. Dkt. No. 81-15. The email emphasized MyNetDiary's request to not be contacted directly by My Health's counsel:

> Please direct any future correspondence regarding this matter to me and to me alone. I wish there to be no misunderstandings. My client will not be entering into any licensing agreements with PLA, for the reasons I have previously explained. I wish this to be very clear. Should you contact me or my client(s) with any further unlawful extortion requests, I will seek sanctions against you . . . . I hope I have made myself imminently clear.

*Id.* The request was ignored. After My Health sued MyNetDiary, My Health's counsel sent another letter directly to MyNetDiary's CEO, which emphasized My Health's commitment to "an early resolution that would conclude legal proceedings." Dkt. No. 81-16.

4

McKesson was sued in August 2016. Before McKesson's answer to the complaint was due, McKesson informed My Health's counsel of McKesson's belief that the allegations were unsupportable and based on "unpatentable claim breadth." Dkt. No. 81-10 at 1. McKesson also informed My Health that the infringement allegations were based on "the Health Buddy appliance," which McKesson purchased from Bosch. *See* Dkt. No. 81-11 at 1. Because My Health had previously filed and settled a lawsuit against Bosch, McKesson informed My Health that the Health Buddy appliance was covered by the license My Health granted to Bosch. *See id.* My Health never responded to McKesson's inquiry regarding the Bosch license.

Despite My Health's avoidance of any merits determination between 2012 and 2014, the defendants remaining in the lawsuits filed in 2016 finally received such a determination. These defendants moved to dismiss My Health's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that the claims of the '985 patent do not recite patent-eligible subject matter. The Court agreed. *See* Case No. 2:16-cv-00535-RWS-RSP, Dkt. No. 66 (E.D. Tex. Feb. 14, 2017). Suffice it to say that the Court concluded that the claims of the '985 patent are "unquestionably 'abstract' within the meaning of *Alice*." *See id.* at 3. The claims did not require any hardware or software component and were broadly directed to "[a] method of tracking [a patient's] compliance with treatment guidelines." *See id.* The Court explained its previous decision to postpone the § 101 determination in the *LifeScan* case, noting that LifeScan's § 101 arguments were more dependent on particular claim terms, whereas the latter defendants more clearly advanced arguments based on any plausible claim construction, in addition to analogizing the '985 patent claims to others found unpatentable by the Federal Circuit. *See id.* at 6.

After defendants' motions to dismiss were granted, final judgment was entered. The defendants then filed a motion to declare My Health's cases exceptional under § 285 and requested

their attorneys' fees. Dkt. No. 81. My Health appealed from the final judgment based on the § 101 decision, Dkt. No. 85, and requested that the motion for attorneys' fees be stayed pending appeal, Dkt. No. 89. That motion was denied. Dkt. No. 98.

On June 30, 2017, the day My Health's appeal brief was due, My Health moved to voluntarily dismiss the appeal. *See* Dkt. No. 106-1. My Health's counsel made the following statement in the motion filed with the Federal Circuit:

> My Health request[s] that the Court grant the voluntary dismissal of this appeal, with each side to bear its own costs. Undersigned counsel has conferred with counsel for appellees and has been informed that this motion is unopposed.

*Id.* at 1-2. The motion to dismiss was granted on the basis of this representation, and the order declared that "[e]ach side shall bear its own costs." *See* Dkt. No. 105 at 2. After the Federal Circuit entered this order, the defendants filed a notice representing that My Health's counsel never conferred with them regarding the voluntary dismissal, and that they never agreed that each party should bear its own costs for the appeal. *See* Dkt. No. 106 at 1.

While My Health's appeal was pending, the Court had scheduled a hearing on defendants' motion for attorneys' fees on June 19, 2017. On June 13, My Health's counsel filed a motion to continue the hearing, citing a conflict due to another case that was scheduled for a July trial in California. *See* Dkt. No. 100. The day after My Health's counsel sought a continuance, but before the Court had ruled on the motion, My Health's counsel asked the California court to continue the July trial to September, and that request was granted. *See* Dkt. No. 106 at 1-2. Without knowing about the schedule change in California, the Court granted My Health's motion to continue and rescheduled the attorneys' fees hearing for August 15, 2017.

During the hearing on the attorneys' fees motion, My Health's counsel focused largely on arguments that were never raised in My Health's briefing, including the sufficiency of My Health's

infringement contentions. My Health's counsel also argued that My Health's settlement agreements reflected more than nuisance amounts. *See* Tr. at 18:22-19:11, Dkt. No. 129 ("[T]he settlements that have been entered into in the past have been in the range of [$]400,000 for two, [$]285,000 for one, [$]175,000 for another."). Counsel emphasized some of the largest settlement agreements, which the Court later found out—after ordering My Health to produce relevant agreements for *in camera* review—were entered into well before the *Alice* decision. The trend in settlement agreements made thereafter was never brought to the Court's attention. Defendants explained their view that the cases should be declared exceptional regardless of the amount of any settlement agreement or the adequacy of My Health's infringement contentions.

## DISCUSSION

Section 285 of the Patent Act allows a district court, in an exceptional case, to award reasonable attorney fees to the prevailing party. 35 U.S.C. § 285. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). An exceptional case under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.*

My Health's cases are exceptional for a number of reasons. The first is the weakness of My Health's post-*Alice* patent-eligibility position. Patient treatment and monitoring methods such as those claimed by the '985 patent had been declared ineligible long before My Health filed its 2016 lawsuits. *See, e.g.*, *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 Fed. App'x 950 (Fed. Cir. 2014). Although *SmartGene* was an unpublished opinion, it was representative of

numerous precedential opinions recognizing that "merely selecting information, by content or source, for collection, analysis, and [announcement] does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas." *FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016) (citation omitted).

As the Court recognized in evaluating defendants' § 101 motion, "[s]uch claims have universally been found to be unpatentable under *Alice*." Dkt. No. 66 at 4. By the time My Health filed its 2016 lawsuits, guidance from the Federal Circuit regarding claims in this category had mounted to a level that would give any litigant a reasonably clear view of § 101's boundaries. The numerous cases invalidating claims directed to information collection and analysis, such as the '985 patent claims, stood in stark contrast to the handful of cases reaching the contrary conclusion under *Alice*, such as *Enfish, LLC v. Microsoft Corporation*, 822 F.3d 1327 (Fed. Cir. 2016), which found a "specific improvement to the way computers operate" patent-eligible. There were of course gray areas, but by the time My Health's 2016 lawsuits were filed, it should have been clear that the '985 patent claims were "manifestly directed to an abstract idea." *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, No. 2016-2442, 2017 WL 6062460, at *4 (Fed. Cir. Dec. 8, 2017). There was no credible argument that the '985 patent claims fell into one of the eligible exceptions defined in cases such as *Enfish*.

The weakness in My Health's § 101 position is by itself a sufficient basis for finding the cases exceptional. As the Federal Circuit explained in *Inventor Holdings*, such a finding is well within the Court's discretion. *See id.* Indeed, declaring a case exceptional based solely on a party's weak position regarding patent eligibility "is necessary to deter wasteful litigation in the future." *Id.* (quoting lower court opinion).

8

The Court's previous denial of the motion to dismiss in the *LifeScan* case did not give My Health a reasonable basis to continue asserting the '985 patent. As in *Inventor Holdings*, this Court never "endorsed the patent-eligibility of the asserted claims" because the denial of a motion to dismiss is not a merits decision, but rather only the postponement of the merits decision. *See id.* at *5. It was My Health's responsibility to "reassess its case in view of new controlling law," namely decision after decision from the Federal Circuit finding claims in the information-based category, such as those in the '985 patent, ineligible under *Alice*. *See id.* at *6.

My Health stresses the '985 patent's presumption of validity, but the presumption is not enough to avoid an exceptionality finding. *See* Dkt. No. 90 at 8-9. To My Health's credit, the presumption has been considered by courts denying fees on the basis of a weak validity position under § 101. *See, e.g.*, *Garfum.com Corp. v. Reflections by Ruth*, No. CV 14-5919-JBS-KMW), 2016 WL 7325467, at *4 (D.N.J. Dec. 16, 2016). In cases such as *Garfum.com*, however, the reluctance to find exceptionality, based in part on the presumption of validity, is not unreasonable when the examiner considered whether the patent was eligible under current § 101 law, as the court in *Garfum.com* emphasized. *See also Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999) (explaining relevance of the agency's initial consideration of the question being raised in litigation to the presumption of validity); *B/E Aerospace, Inc. v. Zodiac Aerospace*, No. 2:16-cv-01417-JRG, 2017 WL 1684540, at *9 (E.D. Tex. Apr. 17, 2017). But the '985 patent issued in 2003, well before *Alice*, and it would be a mistake to overemphasize the presumption. The examiner that allowed the '985 patent claims did not contemplate developments in the law that unfolded more than a decade later.

My Health's cases are exceptional for other reasons. The litigation campaign was extensive—31 lawsuits, 11 declaratory judgment actions, and 5 IPRs—all without a determination

on the merits until 2017, five years after My Health's campaign began. To be sure, a volume litigant does not automatically expose himself to attorneys' fees simply because he files a lot of lawsuits. But the number of lawsuits filed by My Health, many of which settled right on the cusp of a merits determination (most for similar amounts), supports the conclusion that My Health was filing lawsuits "for the sole purpose of forcing settlements, with no intention of testing the merits of [the] claims." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015).

This conclusion is bolstered by the similar settlement amounts reached with different defendants. Most of the settlement agreements entered into after *Alice* were for remarkably similar amounts, most of them falling between $25,000 and $50,000. Three settlement agreements involving different defendants were all for exactly $30,000. Given the lack of a determination on the merits in the district court actions or the IPRs until five years into the litigation campaign, the similar settlement amounts strongly suggest that My Health was "exploiting the high cost to defend complex litigation to extract a nuisance value settlement." *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011). The settlement amounts against the different defendants could not have possibly been tied to a reasonable royalty for use of the claimed invention. There is nothing in the record suggesting that the amounts were tied to the alleged invention's footprint in the marketplace. It would be implausible to suggest that so many different defendants had made or sold roughly the same number of allegedly infringing units at the time of settlement.

Importantly, there is evidence in the record suggesting that the $25,000 to $50,000 settlement amounts do in fact represent a "nuisance" value, or in other words a value that is far less than the cost of defending a patent infringement lawsuit. Each defendant seeking fees in this case spent between $82,000 and $111,000 through the early discovery phase of the case, and the most significant event in the cases was the defendant's motion to dismiss. Most of My Health's

settlement amounts, at least those that arose after *Alice*, were for roughly half the amount each defendant spent on the case before a claim construction hearing could be held, or in other words, before any merits determination could be made. My Health's settlement offers effectively ensured that the '985 patent's susceptibility to invalidation under § 101 remained unexposed. *See id.* at 1327. This supports a finding of exceptionality. *See Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1389-90 (Fed. Cir. 2017).

The cases are also exceptional in light of My Health's conduct in dealing with and litigating the cases against the defendants that are seeking fees. On at least two occasions, My Health's counsel directly contacted a defendant's CEO after having been made aware that the defendant was represented by counsel. *See* Dkt. Nos. 81-16 (My NetDiary) and 81-18 (ALRT). In the case of MyNetDiary, the direct contact came after My Health's counsel was given a stern warning not to contact MyNetDiary directly. Dkt. No. 81-15. The warning was ignored.

My Health's direct communication with the represented defendants was improper. At the time My Health sent the letters to the represented defendants, My Health's counsel was a member of Utah bar. Utah, like most if not all other states, forbids a lawyer to "communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer."[5] Improper letters sent directly to the defendant—who has hired a lawyer in part to be free and clear of any such contact—supports the conclusion that My Health's cases are exceptional.

Other aspects of My Health's litigation behavior are troubling. My Health filed a notice of appeal after the § 101 decision, followed by a motion to stay the determination on the fees motion. After the motion to stay the fees determination was denied, My Health filed a motion to dismiss

---

[5] Rule 4.2(a), available at https://www.utcourts.gov/resources/rules/ ucja/ch13/4_2.htm.

the appeal with the Federal Circuit. My Health's intention may not have been to evade a determination on defendants' fees motion, but the circumstances cast this conclusion in doubt. Notably, My Health was ultimately unwilling to test this Court's § 101 determination at the Federal Circuit, even though there would have been only a single appellate issue to brief and argue.

The motion to dismiss the appeal My Health filed with the Federal Circuit is also troubling. When an attorney signs a motion, he represents to the best of his knowledge that the contentions being presented to the Court are accurate. *See* Fed. R. Civ. P. 11(b). My Health's counsel represented to the Federal Circuit that the parties had met and conferred, agreed to dismiss the appeal, and agreed that each side would bear their own costs. Dkt. No. 106-1 at 1-2. That appears to have been untrue. *See* Dkt. No. 106. My Health has never offered a satisfactory explanation for the misrepresentation. Similar questionable avoidance tactics occurred here, with My Health's counsel representing that the hearing on the fees motions should be continued because of a conflict that was in fact no conflict at all. *See* Dkt. No. 106 at 1-2. In sum, the totality of the circumstances support the conclusion that My Health's cases are exceptional.

The only remaining matter is the amount of fees. Defendants request the following:

| | |
|---|---|
| ALRT | $82,198.95 |
| InTouch | $94,339.50 |
| MyNetDiary | $83,329.50 |
| McKesson | $111,995.00 |

My Health does not dispute that counsel for the defendants charged reasonable hourly rates, but My Health disputes the amount of the fees. My Health originally stated that without supporting affidavits, there was no way for My Health to determine whether these fee amounts were reasonable. In reply, the defendants submitted detailed time records justifying that the number of hours worked was reasonable. *See* Dkt. Nos. 97-1 through 97-4.

12

My Health's only opposition to the amount of the fees award is at page five of My Health's surreply brief. *See* Dkt. No. 119 at 5. My Health argues that the invoices submitted by the defendants are heavily redacted, making them difficult to assess. But the Court had no trouble reviewing the invoices—only privileged information was redacted. Importantly, the invoices show that the same time was not counted multiple times for each defendant but rather divided among the defendants. *See* Dkt. Nos. 97-1 through 97-4.

Other than the argument about redaction, the only other argument My Health makes is that at least $58,855.50 may have been billed for work on an IPR petition, which according to My Health "is unrelated to My Health's infringement claims." *See* Dkt. No. 119 at 5 n.1. That argument is not persuasive here; the defendants never would have sought IPR if they had not been sued for allegedly infringing the '985 patent. My Health should have known about the susceptibility of the '985 patent to invalidation under § 101 at the time the lawsuit was filed. Subsequent events, including defendants' pursuit of IPR, were necessarily caused by My Health's initiation of the lawsuits. Consequently, all of the defendants' reasonable expenses after the day My Health filed suit should be awarded. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186-90 (2017) (explaining but-for causation requirement for determining attorneys' fees).

## CONCLUSION

For these reasons, it is ordered and adjudged as follows:

(1) My Health's cases are declared exceptional under 35 U.S.C. § 285.

(2) My Health is ordered to pay the following defendants' attorneys' fees, through defendants' counsel, within 60 days:

      a.  ALR Technologies, Inc.:     $82,198.95

      b.  InTouch Technologies, Inc.:    $94,339.50

13

   c.  MyNetDiary, Inc.:        $83,329.50

   d.  McKesson Technologies, Inc.:  $111,995.00

**SIGNED this 19th day of December, 2017.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

MY HEALTH, INC.,

       Plaintiff,

   v.

ALR TECHNOLOGIES, INC.,

       Defendant.

Lead Case No. 2:16-CV-00535-RSW-RSP

---

## MY HEALTH INC.'S OPPOSED MOTION FOR STAY PENDING APPEAL

Plaintiff My Health, Inc. (*"My Health"*) respectfully submits this Motion for a Stay Pending Appeal and Memorandum in Support thereof (*"Motion to Stay"*). On March 27, 2017 this Court issued a Final Judgment in this matter granting Defendants ALR Technologies, Inc., InTouch Technologies, Inc., MyNetDiary, Inc., and McKesson Technologies, Inc.'s (*"Defendants"*) separate motions to dismiss with each party to bear its own costs. Subsequently, on April 10, 2017, Defendants filed a Motion to Declare Cases Exceptional and for Attorneys' Fees under 35 U.S.C. § 285 (*"Fees Motion"*) seeking to collect over $370,000 (Dkt. #81). My Health respectfully requests that any further litigation over attorneys' fees be deferred until after resolution of the appeal that My Health filed with the Federal Circuit on April 25, 2017 (Dkt. #85).

Defendants do not agree and will oppose My Health's Motion to Stay.

Litigating the issue of attorneys' fees when an appeal on the issue that forms the basis of Defendants' fees motion is pending is not a wise or judicial use of time and money. Should My

Health prevail in its appeal on the merits, Defendants' Fess Motion will fail on its face. However, if My Health is unsuccessful on appeal then the issue of fees can then be decided.

Defendants' Fees Motion raises a host of issues, many of which are not squarely addressed in the four corners of its Motion. Defendants seek to collect not only all of the fees it claims to have incurred as a result of the Court's granting of Defendants' Rule 101 Motion to Dismiss, but also fees that Defendants InTouch and McKesson claim to have incurred in preparing IPR petitions. Defendants think that the granting of their Rule 101 motion results in an automatic fee award; whereas My Health argues that Defendants must satisfy all of the conditions of an exceptional case before a fee request is appropriate and is separate and apart from any fees which may be awarded as a result of the pending appeal.

Apart from the issue of whether an award of fees for Defendants is appropriate in this matter, Defendants fail to acknowledge that at the time My Health filed its respective complaints, this Court had already denied Rule 101 challenges for this same patent. The Court's prior 101 decision in favor of My Health provided a strong basis for My Health to continue to assert its claims against Defendants. The cases are not "exceptional" under § 285 as the complaints were brought with a satisfactory basis.[1]

Further, because the billing information provided in support of Defendants' request for fees does not separate individual attorney tasks but instead offers that billing records will be provided upon Reply, the claimed amount of hours billed are not easily amenable to an analysis of the reasonableness of its claim. To the extent that Defendants intend to present new evidence in their Reply memorandum, in the form of their billing records that could have been produced

---

[1] *My Health, Inc. v. LifeScan, Inc*., 2:2014-cv-00683.

2

with their opening brief, My Health will be prejudiced by not having a meaningful opportunity and time to review the records in the short time frame permitted for sur-replies. *See, e.g., Beauty Mfg. Sols. Corp. v. Ashland, Inc.,* No. 3:10-CV-2638-G, 2012 WL 4341814, at *1 (N.D. Tex. Aug. 29, 2012), *report and recommendation adopted*, No. 3:10-CV-2638-G, 2012 WL 4354935 (N.D. Tex. Sept. 24, 2012) ("Because Defendant did not have a meaningful opportunity to respond, the reply appendix has not been considered.") (Citation to *Spring Industries, Inc. v. American Motorists Ins. Co.,* 137 F.R.D. 238, 239 (N.D.Tex.1991) (Fitzwater, J.) ("[W]here a movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response, the court still retains the discretion to decline to consider them.").

As discussed below, no harm will come by deferring consideration of Certain Defendants' Fees Motions until after the pending appeal is resolved. Accordingly, My Health seeks to defer litigating the issue of attorneys' fees until such time as the appeal is concluded.

## **ARGUMENT**

The Federal Rules of Civil Procedure contemplate that a district court may defer ruling on a request for attorneys' fees and costs until a pending appeal has been decided. *See* Comments to Fed. R. Civ. P. 54 (1993 amendments) ("If an appeal on the merits of the case is taken, the court may rule on the claim for fees, may defer its ruling on the motion, or may deny the motion without prejudice, directing under subdivision (d)(2)(B) a new period for filing after the appeal has been resolved"). This Court has also recognized its inherent authority to issue a stay of proceedings pending the outcome of the parties' appeal. *See, e.g. DSS Technology Management, Inc. v. Taiwan Semiconductor Manufacturing Company, LTD., ET AL.,* 2:14-cv-00199-RSP, Dkt.

#207, July 10, 2015 Order Staying Proceeding.

The Supreme Court has identified four factors to be considered in assessing a request for a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The stay factors contemplate "individualized judgments" in each case, and "the formula [for doing so] cannot be reduced to a set of rigid rules." *Id.* at 777 (emphasis added). With respect to this test, "[c]ourts in this Circuit have refused to apply these factors in a mechanical fashion, holding that "the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Mazurek v. United States*, No. 99-2003 C/W 99-2229, 2001 WL 260064, at *1 (E.D. La. Jan. 11, 2001). Under either standard, My Health's request to stay should be granted.

In its appeal, My Health is anticipated to contend that the Court's finding that the patent claims are directed to abstract ideas and do not provide an inventive concept is incorrect. This presents a substantial question for appeal.

Since the Court has not likely lost faith in its own ruling in the past several weeks, and as My Health's appellate brief is not yet due, My Health will not belabor in detail all of the bases for its appeal. The fact, however, that the Court believes its ruling to be proper does not necessarily militate against the requested stay. The first factor should be applied flexibly, as were it applied literally it would almost never be met. *United States v. ASCAP*, 1991 U.S. Dist. LEXIS 14274, *2-3 (S.D.N.Y. Oct. 3, 1991).

The second factor weighs heavily in favor of a stay. Granting the requested stay preserves judicial resources, the parties' resources, and allows My Health to focus on preparing the matter for the Federal Circuit. Litigating the issue of attorneys' fees will require that the Court expend resources that will have been wasted (and may have to be duplicated or may be redundant or moot) in the event that My Health succeeds in its appeal. Indeed, citing concerns of judicial efficiency, and without even examining the four factors cited above for stay of an order, courts often defer ruling on a request for fees until after an appeal on the merits is decided. *See, e.g. Dulin v. Bd. of Comm'rs of Greenwood Leflore Hosp.*, No. 4:07-CV-194-A-V, 2013 WL 5464689, at *2 (N.D. Miss. Sept. 30, 2013) (With respect to attorneys' fees motions submitted while a judgment on the merits is pending appeal "the Court is not required to resolve such matters before the appeal is resolved."); *see also Kirmer v. Goodyear Tire & Rubber Co.,* 2012 WL 2564955 (E.D.La. July 2, 2012) (adopting recommendation of U.S. magistrate judge to dismiss without prejudice plaintiff's rule 54 motion for attorney fees as premature); *Art Midwest, Inc. v. Clapper,* 2004 WL 877613 (N.D.Tex. Apr. 20, 2004) (adopting recommendation of U.S. magistrate judge to deny rule 54 motions without prejudice to renewal after disposition of appeal on the merits); *Rau v. Apple–Rio Mgmt. Co., Inc.,* 2000 WL 35591645 (N.D.Ga. March 29, 2000) ("[I]f one or both of the parties appeal ...., it may be more efficient to defer ruling on additional fees and expenses until after the appeal is resolved.").[2]

---

[2] This position is also followed in other jurisdictions. *See e.g., Hipp v. Liberty Nat. Life Ins. Co.*, 65 F. Supp.2d 1314, 1323 (M.D. Fla. 1999) ("In the interests of judicial economy, the Court will … defer ruling on costs and attorneys' fees until all appeals have been resolved"), *aff'd in part, rev'd on other grounds in part*, 252 F.3d 1208 (11th Cir. 2001); *Nat'l Farmer's Org., Inc. v. Associated Milk Producers, Inc.*, 850 F.2d 1286, 1312 (8th Cir. 1988) ("Thus, rather than undertaking the time-consuming task of determining a reasonable attorney's fee, only to see the effort overturned on appeal, [ ] the district court wisely deferred ruling on attorneys' fees and

The third factor also weighs heavily in favor of a stay. Certain Defendants will not be harmed by the issuance of the Stay. There is no allegation or basis to allege that My Health will be unable to pay an award of reasonable attorneys' fees following a ruling from the Federal Circuit should My Health lose the appeal and this Court deem an award of fees appropriate. Moreover, if the Court proceeds with litigating the issue of attorneys' fees now, as discussed above and as will be detailed in My Health's appellate briefing, there are an abundance of reasons why an award of attorneys' fees is inappropriate. Thus, as a practical matter, even if awarded at this time, Certain Defendants' collection of such fees would not be permitted until after the Federal Circuit rules on My Health's appeal.

The fourth factor, regarding the public interest, also falls in favor of My Health. The public interest is in an efficient use of resources. Litigating the issue of attorneys' fees before the Federal Circuit has ruled on My Health's appeal is simply not efficient, nor is there any prejudice to any party by deferring the issue. Entitlement to attorneys' fees based upon the granting of the Rule 101 motion is not a foregone conclusion. If My Health is successful on appeal, Defendants would not be entitled to fees. If unsuccessful on appeal, Defendants would then be in a position to assert claims for fees at that time.

---

costs pending appeal")(citations omitted); *Hammond v. Alcoa, Inc.*, 2009 U.S. Dist. LEXIS 14212, *3-4 (W.D. Pa. Feb. 24, 2009) (deferring motion for an award of attorney's fees while appeal on merits was pending, finding the motion "premature" and that to rule before the Third Circuit decides the appeal would be "inappropriate" and "inefficient"); *Lasic v. Moreno*, 2007 U.S. Dist. LEXIS 88608,*2-3 (E.D. Cal. Nov. 21, 2007) (finding it in interests of judicial economy to defer ruling on attorneys' fees request when appeal on merits is pending). In addition to judicial efficiency, the parties can avoid the unnecessary expenditure of fees (should this Court issue the requested Stay) by having to brief the attorneys' fees issue only one time.

## **CONCLUSION**

For these reasons, My Health respectfully requests the Court grant its motion for a stay pending appeal. Alternatively, My Health requests an amended briefing schedule whereby the deadline for its opposition papers to Certain Defendants' motion for fees and costs would be twenty (20) days following this Court's denial of My Health's request for a stay pending appeal.

Dated:  May 1, 2017                    PIA ANDERSON MOSS HOYT

                                    By: /s/ Joseph G. Pia
                                    Joseph G. Pia
                                    State Bar No. 24093854
                                    joe.pia@pa-law.com
                                    Robert E. Aycock*
                                    raycock@pa-law.com
                                    Chrystal Mancuso-Smith*
                                    cmancuso@pa-law.com
                                    Pia Anderson Moss Hoyt
                                    136 E. South Temple, 19th Floor
                                    Salt Lake City, Utah  84111
                                    Phone: (801) 350-9000
                                    Fax: (801) 350-9010
                                    * Admitted in this District

                                    Charles Ainsworth
                                    State Bar No.  00783521
                                    Parker, Bunt & Ainsworth, P.C.
                                    100 E. Ferguson, Suite 1114
                                    Tyler, TX 75702
                                    903/531-3535
                                    903/533-9687
                                    E-mail: charley@pbatyler.com

                                    *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 1, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Joseph G. Pia*
Joseph G. Pia

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MY HEALTH, INC.,<br><br>       Plaintiff,<br><br>   v.<br><br>ALR TECHNOLOGIES, INC.,<br><br>      Defendant. | Lead Case No. 2:16-CV-00535-RSW-RSP |

## <u>ORDER GRANTING MY HEALTH INC.'S OPPOSED MOTION FOR STAY PENDING APPEAL</u>

On this date came for consideration My Health's Opposed Motion for Stay Pending Appeal. The Court being of the opinion that same should be GRANTED, it is therefore,

ORDERED that the Motion for Stay Pending Appeal be and is hereby GRANTED and that the briefing on Defendants ALR Technologies, Inc., InTouch Technologies, Inc., MyNetDiary, Inc., and McKesson Technologies, Inc.'s  pending Motion to Declare Cases Exceptional and for Attorneys' Fees under 35 U.S.C. § 285 (Dkt. #81) should be stayed until the conclusion of My Health's pending Appeal.

1

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **MY HEALTH, INC.** | |
| **v.** | **CASE NO. 2:16-cv-00535 (LEAD)** |
| **ALR TECHNOLOGIES, INC.** | |

## DEFENDANTS' MOTION FOR ORDER TO SHOW CAUSE
## WHY MY HEALTH SHOULD NOT BE HELD IN CONTEMPT OF COURT

The Court's Exceptional Case and Fees Order (Dkt. No. 131) was not enough to My
Health to prevent it from continuing to flout this Court's orders and rules. This time, My Health
did not comply with the Court's deadline to pay Defendants the fees awarded in the Fees Order,
nor did My Health post the required supersedeas bond to stay the Fees Order pending appeal.
Thus, ***My Health is in clear violation of Court order*** and should be held in contempt.

Further, even though the amount awarded to Defendants in the Fees Order is a fraction of
the amount My Health previously demanded from Defendants to settle this case, it appears that
My Health is now backtracking on its previous representation to the Court that "there is no . . .
basis to allege that My Health will be unable to pay an award of reasonable attorneys' fees" (Dkt.
No. 89 at 7). Accordingly, and for the reasons set forth below, Defendants request that the Court
(i) join My Health corporate officer Michael Eiffert and My Health outside counsel Joseph Pia[1]
as third parties, and (ii) apply its Fees Order against My Health, Dr. Eiffert, and Mr. Pia as
jointly and severally liable parties.

The Court should also order My Health to pay Defendants' fees and costs in connection
with this motion and impose sanctions on Mr. Pia for his continued litigation misconduct.

---

[1] References to Mr. Pia include both him and his firm Pia Anderson Moss Hoyt, so as to prevent
Mr. Pia from using his firm to shield against execution of the Fees Order.

1

## I.    BACKGROUND

On December 20, 2017, the Court entered an Order declaring this case exceptional and awarding Defendants their attorneys' fees. *See* Dkt. No. 131 ("Fees Order"). On January 4, 2018, Mr. Pia requested a call with the undersigned to "discuss a possible work-out and settlement on the fees and costs." Exh. A hereto (email correspondence between Mr. Pia and the undersigned) at 4. That call took place on January 8, 2018, in which Mr. Pia stated that he planned to send a proposal to Defendants regarding the Fees Order. A week after that call, having not yet received any proposal and concerned that My Health and Mr. Pia were going to backtrack on their prior representation to the Court that "there is no . . . basis to allege that My Health will be unable to pay an award of reasonable attorneys' fees" (Dkt. No. 89 at 7), the undersigned sent an email to Mr. Pia expressing those concerns and requesting My Health's proposal as "[Defendants] remain open to considering whatever proposal you may have." *See* Exh. A at 2. Mr. Pia responded that "My Health has not taken a position one way or the other about its next steps" and that the undersigned's email might "have a chilling effect on My Health's desire to continue along these lines." *See id*. at 1. Mr. Pia has since not sent any proposal or other communication to Defendants.

On February 7, 2018, the undersigned sent an email to Mr. Pia taking issue with his representation to the Federal Circuit that "Defendants are unwilling to compromise," which was untrue as the undersigned last wrote to Mr. Pia that Defendants were "open to considering whatever proposal you may have." *See id*. at 1; Exh. B (My Health February 6, 2018 Docketing Statement to Federal Circuit) at 2. Additionally, the undersigned reminded Mr. Pia that My Health was required to post a supersedeas bond in order to stay the Court's Fees Order pending appeal. *See* Exh A. at 1. My Health neither responded nor posted bond. And with the passing of the February 20, 2018 deadline to comply with the Fees Order, Defendants bring this motion.

## II.    ARGUMENT AND AUTHORITIES

### A.    My Health Is In Contempt

 "It is elementary that the court against which a contempt is committed has exclusive jurisdiction to punish for such contempt." *Texas Capital Bank v. Dallas Rodester, Ltd.*, 2015 WL 12910774, *1 (June 5, 2015 E.D. Tex.) (quoting *United States v. Barnett*, 330 F.3d 369, 385 (5th Cir. 1963)).

In seeking an order of civil contempt, the movant must establish the following by clear and convincing evidence: (1) issuance of a court order, (2) requiring specific conduct of the respondent, and (3) the respondent's failure to comply with the order. *Petroleos Mexicanos v. Crawford Enterprise*, Inc., 826 F.2d 392, 401 (5th Cir. 1987) (citations omitted). When a party, with knowledge of the order, violates an order, which requires the performance of a specific act, he commits contempt. *Whitfield v. Pennington,* 832 F.2d 909, 913 (5th Cir. 1987), *cert. denied,* 487 U.S. 1205 (1988); *see also S.E.C. v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 669 (5th Cir. 1981). Intent or willfulness is irrelevant; the only issue is compliance with the order. *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949); *Whitfield*, 832 F.2d at 913; *Jim Walter Resources, Inc. v. Int'l Union, United Mine Workers,* 609 F.2d 165, 168 (5th Cir. 1980).

Here, it is indisputable that the Court issued its Fees Order on December 20, 2017 ordering that My Health pay Defendants' their attorneys' fees in the total amount of $371,862.95 by February 20, 2017 (60 days from the order), and that My Health did not make any payment to Defendants by the deadline. Thus, My Health is in contempt.

**B.**    **Dr. Eiffert and Mr. Pia Should Be Joined Under The Court's Inherent Power**

> Courts do not sit for the idle ceremony of making orders and pronouncing judgments, the enforcement of which may be flouted, obstructed, and violated with impunity, with no power in the tribunal to punish the offender. [Federal] courts, equally with those of the state, are possessed of ample power to protect the administration of justice from being thus hampered or interfered with.

*Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (quoting *Lineker v. Dillon*, 275 F. 460 (N.D. Cal. 1921). Moreover, this Court has the inherent power to sanction conduct across "a full range of litigation abuses" not only by parties, but also non-parties that are closely tied to the litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 46 (1991); *Iris Connex, LLC v. Dell, Inc.*, 235 F.Supp.3d 826, 858-59 (E.D. Tex. 2017) (discussing cases supporting sanctions against non-parties).

Here, it is indisputable that Dr. Eiffert, My Health's Founder, President, and CEO who has been championed as the key corporate principal behind My Health's litigation campaign, has an interest in the outcome of this case and substantially participated in these proceedings. Dkt. No. 90 at 4-5; Decl. of Dr. Michael Eiffert. Similarly, Mr. Pia has as lead counsel substantially participated in these proceedings and is signatory to various instances of litigation misconduct already found by the Court as resulting in its Fees Order and as further discussed below. Mr. Pia cannot simply claim that he and his firm acted solely on instruction of their client – it was incumbent on Mr. Pia as an officer of the Court to not make misrepresentations or otherwise mislead the Court, and to obey its rules and orders. Thus, to afford each the opportunity to respond, Dr. Eiffert and Mr. Pia should be joined as third parties under Fed. R. Civ. P. 19 and the Court's inherent powers. *See Iris Connex, LLC v. Dell, Inc.*, No. 2:15-cv-01915-JRG, Dkt. No. 74 at 1-2 (E.D. Tex. Dec. 6, 2016) (joining as third parties plaintiff's corporate principals and outside counsel).

My Health's and Mr. Pia's litigation misconduct has been pervasive throughout this case,

and even despite the various troubling findings in the Court's December 2017 Exceptional Case

and Fees Order, has continued in the months since:

- Unethically, repeatedly, and directly contacting knowingly represented parties. *See* Fees Order at 11.

- Seeking over $2 million from Defendants to settle litigation on a patent that to "any litigant" was "manifestly directed to an abstract idea." *See id*. at 8.

- Demanding an almost $1 million settlement from Defendant McKesson Technologies despite being informed by the undersigned that the accused product was purchased from a licensed entity, to which My Health and Mr. Pia never responded. *See id*. at 5.

- "My Health's counsel representing that the hearing on the fees motions should be continued because of a conflict that was in fact no conflict at all." *Id*. at 6, 12.

- Arguing that the Court should stay its decision on Defendants' fees motion because My Health filed a notice of appeal on the Court's § 101 decision, but then dismissing the appeal after the Court denied My Health's stay motion. *See id*. at 5-6, 11-12.

- Falsely representing to the Federal Circuit that the parties had met and conferred, agreed to dismiss the appeal, and agreed that each side would bear their own costs. *See id*. at 12 ("That appears to have been untrue. [ ] My Health has never offered a satisfactory explanation for the misrepresentation.").

- Submitting only 23 of "more than 50" settlement/license agreements in defiance of Court's order to submit "all" agreements. *See* Aug. 15, 2017 Hr. Tr., 66:15-22; Dkt. No. 118; Dkt. No. 124, at ¶ 8 (citing Exh. E thereto).

- Failing to post the supersedeas bond required under Fed. R. Civ. P. 62 to stay execution of the Court's Fees Order pending appeal. My Health has made no overture to Defendants regarding an alternative to having to post the bond.

- Failing to comply with Court's order to pay Defendants' attorneys' fees by February 20, 2018 (60 days from order), even though My Health and Mr. Pia represented to this Court that "there is no . . . basis to allege that My Health will be unable to pay an award of reasonable attorneys' fees" (Dkt. No. 89 at 7).

- On February 6, 2018, falsely representing to the Federal Circuit that "Defendants are unwilling to compromise" (Exh. B at 2) when undersigned on January 15, 2018 specifically wrote to Mr. Pia that "[w]e [ ] await the fees payment proposal you said you would send us" and "***we remain open to considering whatever proposal you may have***, and we hope to receive that from you at the earliest." Exh. A at 2 (emphasis added).

In view of the pattern of litigation misconduct in its frivolous case, misleading dealings

with the Court and Defendants, and repeated defiance of the Court's orders and rules, My Health should not now be allowed to hide behind its corporate entity status in effort to shield actual actors Dr. Eiffert and Mr. Pia from liability. Dr. Eiffert should be joined and held liable for the fees award for similar reasons as discussed in Judge Gilstrap's decision in *Iris Connex*. *See Iris Connex*, 235 F.Supp.3d at 843-44 ("the corporate form cannot be used as a shield to insulate officers and parent corporations against liability for their own tortious conduct or tortious conduct they control") (citations omitted).

   Similarly, Mr. Pia should be joined and held liable for his role in the rampant litigation misconduct he has been responsible for, or at minimum, has allowed to happen as lead counsel for My Health. As this Court again reminded Mr. Pia in its Fees Order, Fed. R. Civ. P. 11 requires an attorney to act truthfully. *See* Fees Order at 12. But Mr. Pia's continued conduct can only be interpreted as blatant disregard of the purpose behind Rule 11 and of the Court's orders and rules. Indeed, Mr. Pia's conduct in this case goes far beyond advancing a frivolous legal claim, which Judge Gilstrap found by itself sufficient to warrant sanctions. *Iris Connex*, 235 F.Supp.3d at 857. And similar to the fact pattern in *Iris Connex*, Mr. Pia in this case has continued in his ways[2] even after being rebuked by the Court in the Fees Order and the undersigned warning Mr. Pia that "[Defendants] may have to seek recourse against you and your firm in support of collecting the fees awarded to defendants (and any additional fees incurred in furtherance of that outcome)." Exh. A at 2, 3 ("you need to escrow an acceptable appeal bond amount, and absent such, we will seek to enforce the district court order in addition to seeking other relief"); *Iris Connex*, 235 F.Supp.3d at 857. As such, Mr. Pia should also be made jointly and severally liable to pay Defendants' attorneys' fees under 28 U.S.C. § 1927.

---

[2] For example, failing to post a supersedeas bond required under the Federal Rules, failing to comply with the Fees Order, and misrepresenting to the Federal Circuit that Defendants would not compromise.

## III.   RELIEF SOUGHT

Accordingly, in view of the above, Defendants request that the Court:

(i)     issue an order to show cause why My Health should not be held in contempt of court;

(ii)    join Dr. Eiffert, and Mr. Pia and his firm, as third parties;

(iii)   apply its Fees Order against My Health, Dr. Eiffert, and Mr. Pia and his firm as jointly and severally liable parties, or alternatively order that they immediately post a supersedeas bond pursuant to LOCAL RULE CV-62 ("amount of the judgment, plus 20% of that amount to cover interest and any award of damages for delay, plus $250.00 to cover costs");

(iv)    order payment of Defendants' attorneys' fees and costs incurred in connection with this motion, including attendant briefing and hearing (which accounting of fees and costs Defendants will provide); and

(v)     at least to effect deterrence, impose sanctions on Mr. Pia for his repeated litigation misconduct.

Dated: February 27, 2018           Respectfully submitted,

By: */s/ Wasif H. Qureshi*      
Wasif H. Qureshi
Texas State Bar No. 24048155
wqureshi@jw.com
Blake T. Dietrich
Texas State Bar No. 24087420
bdietrich@jw.com
**JACKSON WALKER LLP**
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4521

**COUNSEL FOR DEFENDANTS ALR TECHNOLOGIES, INC., INTOUCH TECHNOLOGIES, INC., MYNETDIARY, INC., AND MCKESSON TECHNOLOGIES INC.**

"J" Jackson Shrum
jshrum@jshrumlaw.com
**AUSTRIA SHRUM, LLC**
1201 North Orange Street, Suite 502
Wilmington, DE 19801
Telephone: 302-543-7551

**COUNSEL FOR DEFENDANT MYNETDIARY, INC.**

### CERTIFICATE OF SERVICE

The undersigned certifies that on February 27, 2018 the foregoing document and accompanying papers were served on all counsel of record via the Court's electronic filing system.

/s/ *Wasif Qureshi*
Wasif Qureshi

### CERTIFICATE OF CONFERENCE

As discussed in the foregoing motion, counsel for the parties had a telephone call on January 8, 2018 on which Mr. Joseph Pia, counsel for My Health, stated that he would send Defendants a proposal regarding the Court's Exceptional Case and Fees Order (Dkt. No. 131). On January 15, 2018, having received no such proposal from Mr. Pia, the undersigned sent an email to Mr. Pia requesting such proposal. *See* Exh. A at 2. In response, Mr. Pia stated that the undersigned's email might have "a chilling effect on My Health's desire to continue along these lines." *Id.* at 1. To date, My Health has not sent Defendants any proposal or communication regarding the Fees Order.

Additionally, on February 7, 2018, the undersigned sent an email to Mr. Pia informing him, among other things, that My Health is required to post a supersedeas bond to stay the Fees Order pending My Health's recently initiated appeal of the Fees Order. *Id.* In that email, the undersigned also cautioned Mr. Pia that absent post of the appeal bond, "[Defendants] will seek to enforce the district court order in addition to seeking other relief." *Id.* To date, My Health has not responded.

/s/ *Wasif Qureshi*
Wasif Qureshi

# EXHIBIT A

## Qureshi, Wasif

| | |
|---|---|
| **From:** | Qureshi, Wasif |
| **Sent:** | Wednesday, February 7, 2018 11:58 AM |
| **To:** | 'Joseph Pia'; Jack Shrum |
| **Cc:** | Chrystal Mancuso-Smith; charley@pbatyler.com; Wasif Qureshi (wqureshi@jw.com); Dietrich, Blake |
| **Subject:** | My Health - appeal bond |

Joe –

It is unfortunate that you have again misrepresented to the Federal Circuit. The first time was discussed and a reason for the district court's decision in its fees order. And now, you in My Health's docketing statement represented to the Federal Circuit that "Defendants are unwilling to compromise." That is not true – my last correspondence to you below specifically states "we remain open to considering whatever proposal you may have." It is you and My Health that have since not sent any such proposal.

The above aside, you have not come forward with a proposal for the amount of the appeal bond My Health is required to post. Please do so promptly. In order to stay the district court's § 285 / fees order, you need to escrow an acceptable appeal bond amount, and absent such, we will seek to enforce the district court order in addition to seeking other relief.

Regards,

**Wasif Qureshi** | Partner



---

**From:** Joseph Pia [mailto:Joe.pia@pa-law.com]
**Sent:** Monday, January 15, 2018 1:50 PM
**To:** Qureshi, Wasif <wqureshi@jw.com>; Jack Shrum <jshrum@jshrumlaw.com>
**Cc:** Chrystal Mancuso-Smith <CMancuso@pa-law.com>; charley@pbatyler.com
**Subject:** Re: Confidential Rule 408 Discussions

Wasif,

It appears that there is a misinterpretation of our less than 10-minute, confidential Rule 408 call regarding My Health's suggestion of a possible work-out and settlement on the fees and costs award. My Health has not taken a position one way or the other about its next steps, other than to open communications about resolution to potentially save the parties time and expense going forward. During our brief call, you did not raise (i), (ii), or (iii).

My Health anticipated preparing a proposal within a week to a week and a half from the time of our call, *i.e.*, sometime this week. It may be that the characterization of the settlement discussions has a chilling effect on My Health's desire to continue along these lines.

Joe

**PIA ANDERSON**
**MOSS HOYT**
UT: 136 E. South Temple,
19th Floor, SLC 84111
TX: 904 Meadow Ln
Southlake 76051
P. (801) 350-9014 (Asst.)
P. (801) 350-9000 (Main)
F. (801) 350-9010
www.pa-law.com

---

**From:** "Qureshi, Wasif" <wqureshi@jw.com>
**Date:** Monday, January 15, 2018 at 10:53 AM
**To:** Joseph Pia <Joe.pia@pa-law.com>, Jack Shrum <jshrum@jshrumlaw.com>
**Cc:** Chrystal Mancuso-Smith <CMancuso@pa-law.com>, Charles Ainsworth <charley@pbatyler.com>, "Qureshi, Wasif" <wqureshi@jw.com>
**Subject:** RE: Confidential Rule 408 Discussions

Joe –

We still await the fees payment proposal you said you would send us when we spoke last week on January 8, 2017.

In the meantime, after conferring with our clients, defendants want to re-iterate the concerns I raised on our call. Namely, we are surprised that after (i) receiving at least ~$2.5M in settlements (based on your 8/22/2017 letter to the court), (ii) repeatedly representing and painting a picture to the Court that My Health and Dr. Eiffert have been very successful, (iii) and seeking over $2M from our clients, My Health now claims that it cannot pay the fees ordered by the Court. ***Indeed, you and My Health previously represented to the Court that the fees determination should be stayed because* there was no basis to allege that My Health would not be able to pay the sought fees award**.

Thus, and given that we are unaware of any non-monetary assets that My Health has that could be used as "payment" for the ordered fees amount, it seems unlikely that defendants will be able to agree to a proposal that does not guarantee that My Health will pay the full ordered amount. However, we remain open to considering whatever proposal you may have, and we hope to receive that from you at the earliest (you indicated on our January 8 phone call that you would send the proposal in a week).

Also, we read the Court's fees order to take issue with various instances of My Health's outside counsel's behavior during this case. Thus, we may have to seek recourse against you and your firm in support of collecting the fees awarded to defendants (and any additional fees incurred in furtherance of that outcome).

Regards,

**Wasif Qureshi** | Partner



**From:** Joseph Pia [mailto:Joe.pia@pa-law.com]
**Sent:** Monday, January 8, 2018 2:58 PM
**To:** Jack Shrum <jshrum@jshrumlaw.com>; Qureshi, Wasif <wqureshi@jw.com>
**Cc:** Chrystal Mancuso-Smith <CMancuso@pa-law.com>; charley@pbatyler.com
**Subject:** Re: Confidential Rule 408 Discussions

I'm going to call Wasif, and perhaps he can loop you in.

**From:** Jack Shrum <jshrum@jshrumlaw.com>
**Date:** Friday, January 5, 2018 at 1:47 PM
**To:** Joseph Pia <Joe.pia@pa-law.com>, "Qureshi, Wasif" <wqureshi@jw.com>
**Cc:** Chrystal Mancuso-Smith <CMancuso@pa-law.com>, Charles Ainsworth <charley@pbatyler.com>
**Subject:** RE: Confidential Rule 408 Discussions

Counsel,

I would also like to be on the call. I am available on Monday at 3 PM CST. Thank you.

Jack Shrum

**AUSTRIA SHRUM, LLC**
ONE COMMERCE CENTER
1201 North Orange Street, Suite 502
Wilmington, DE 19801
Ph: 302-543-7551
Fax: 302-543-6386
Direct: 609-367-2430
E-mail: jshrum@austriashrum.com

CONFIDENTIALITY NOTICE UNAUTHORIZED INTERCEPTION IS PROHIBITED BY FEDERAL LAW [Electronic Communications Privacy Act of 1986, 18 U.S.C. 2701(a) and 2702(a)]This message is being sent by Austria Shrum, LLC, a law firm. It is intended exclusively for the individuals and entities to which it is addressed. This communication, including any attachments, may contain information that is proprietary, privileged, confidential, or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by email and delete all copies of this message.

**From:** Joseph Pia [mailto:Joe.pia@pa-law.com]
**Sent:** Friday, January 5, 2018 3:25 PM
**To:** Qureshi, Wasif <wqureshi@jw.com>
**Cc:** Chrystal Mancuso-Smith <CMancuso@pa-law.com>; charley@pbatyler.com; Jack Shrum <jshrum@jshrumlaw.com>
**Subject:** Re: Confidential Rule 408 Discussions

How about Monday afternoon at 3 your time?

Joe

**PIA ANDERSON**
**MOSS HOYT**
UT: 136 E. South Temple,
19th Floor, SLC 84111
TX: 904 Meadow Ln
Southlake 76051
P. (801) 350-9014 (Asst.)
P. (801) 350-9000 (Main)
F. (801) 350-9010
www.pa-law.com

On Jan 5, 2018, at 12:49 PM, Qureshi, Wasif <wqureshi@jw.com> wrote:

Joe –

I'm available Monday, tied up Tue through Thu, and then available again on Friday.

Best,

**Wasif Qureshi** | Partner
<image001.jpg>

---

**From:** Joseph Pia [mailto:Joe.pia@pa-law.com]
**Sent:** Thursday, January 4, 2018 3:01 PM
**To:** Qureshi, Wasif <wqureshi@jw.com>
**Cc:** Chrystal Mancuso-Smith <CMancuso@pa-law.com>; charley@pbatyler.com; Jack Shrum <jshrum@jshrumlaw.com>
**Subject:** Confidential Rule 408 Discussions

Wasif,

My client has asked that I schedule a call to discuss a possible work-out and settlement on the fees and costs. How is your availability in the next week?

Joe

**PIA ANDERSON**
**MOSS HOYT**
UT: 136 E. South Temple,
19th Floor, SLC 84111
TX: 904 Meadow Ln
Southlake 76051
P. (801) 350-9014 (Asst.)
P. (801) 350-9000 (Main)
F. (801) 350-9010
www.pa-law.com

(733 of 58)

# EXHIBIT B

FORM 26.  Docketing Statement

Form 26
Rev. 10/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 18-1455

My Health, Inc.

v.

ALR Technologies, Inc.

## DOCKETING STATEMENT

This Docketing Statement must be completed by all counsel and filed with the court within 14 days of the date of docketing. When the United States or its officer or agency is a party, this Docketing Statement must be completed by all counsel and filed with the court within 30 days of docketing. All questions must be answered or the statement will be rejected.

Name of the party you represent    My Health, Inc.

Party is (select one)         ☒ Appellant/Petitioner          ☐ Cross-Appellant

                              ☐ Appellee/Respondent           ☐ Intervenor

Tribunal appealed from and Case No.    U.S. District Court, E.D. Texas, Case No: 2:16-cv-00535

Date of Judgment/Order    December 20, 2017        Type of Case    Patent Infringment

Relief sought on appeal    Reversal of the District Court's determination of exceptional case and determination of fees.

Relief awarded below (if damages, specify)    Determination of exceptional case and fees in the amount of $371,862.95.

Briefly describe the judgment/order appealed from    Opinion and Order re: Motion to Declare Case Exceptional

Nature of judgment (select one)

☒ Final Judgment, 28 USC 1295

☐ Rule 54(b)

☐ Interlocutory Order (specify type)

☐ Other (explain; see Fed. Cir. R. 28(a)(5))

**FORM 26. Docketing Statement**

Form 26
Rev. 10/16

Name and docket number of any related cases pending before this court plus the name of the writing judge if an opinion was issued.
If none, please state none.

| None |
| --- |

Brief statement of the issues to be raised on appeal    Whether the District Court abused its discretion

when it found this case exceptional under 35 U.S.C. Section 285 and awarded attorneys' fees.

Have there been discussions with other parties relating to settlement of this case? ☒ Yes ☐ No  If "yes," when were the last such discussions?

☐ Before the case was filed below?

☒ During the pendency of the case below?

☐ Following the judgment/order appealed from?

If "yes," were the settlement discussions mediated? ☐ Yes  ☒ No

If they were mediated, by whom?

Do you believe that this case may be amenable to mediation?  ☐ Yes  ☒ No

Please explain why you believe the case is or is not amenable to mediation.

Patent infringement is not negotiable. Defendants are unwilling to compromise.

Provide any other information relevant to the inclusion of this case in the court's mediation program.

**FORM 26. Docketing Statement**

I certify that I filed this Docketing Statement with the Clerk of the United States Court of Appeals for the Federal Circuit and served a copy on counsel of record, this

Sixth _____ day of February _____ 2018 _____

by: ___ CM/ECF Filing _____

(manner of service)

Joseph G. Pia _____     /s/ Joseph G. Pia _____
        Name of Counsel                         Signature of Counsel

Law Firm          **PIA ANDERSON MOSS HOYT**

Address           136 E. South Temple, Ste., 1900

City, State, ZIP  Salt Lake City, Utah 84111

Telephone Number  801-350-9000

FAX Number        801-350-9010

E-mail Address    Joe.pia@pamhlaw.com

Reset Fields

Case: 18-1455   Document: 4   Page: 4   Filed: 02/06/2018

FORM 30. Certificate of Service

Form 30<br>Rev. 03/16

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on ___February 6, 2018___
by:

□ U.S. Mail

□ Fax

□ Hand

☒ Electronic Means (by E-mail or CM/ECF)

| Joseph G. Pia | /s/ Joseph G. Pia |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | PIA ANDERSON MOSS HOYT |
| Address | 136 E. South Temple, Ste. 1900 |
| City, State, Zip | Salt Lake City, Utah 84111 |
| Telephone Number | 801-350-9000 |
| Fax Number | 801-350-9010 |
| E-Mail Address | joe.pia@pamhlaw.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **MY HEALTH, INC.** | |
| **v.** | **CASE NO. 2:16-cv-00535 (LEAD)** |
| **ALR TECHNOLOGIES, INC.** | |

### ORDER GRANTING DEFENDANTS' MOTION FOR ORDER TO SHOW CAUSE WHY MY HEALTH SHOULD NOT BE HELD IN CONTEMPT OF COURT

Having considered Defendants' Motion For Order To Show Cause Why My Health Should Not Be Held In Contempt Of Court, and for good cause thereon, said Motion is **GRANTED**. My Health, including corporate officer Michael Eiffert and outside counsel Joseph Pia, shall appear before the Court on _____, 2018 at _____ and show cause why My Health should not be held in contempt of court for failing to comply with the Court's Exceptional Case and Fees Order (Dkt. No. 131).

It is further **ORDERED** that Dr. Eiffert, and Mr. Pia and his firm Pia Anderson Moss Hoyt, are hereby **JOINED** as third parties to this case and are jointly and severally liable for payment of the Fees Order and any other amounts the Court awards to Defendants, including Defendants' attorneys' fees and costs incurred in connection with said Motion.

# EXHIBIT D

**Qureshi, Wasif**

| | |
|---|---|
| **From:** | txedCM@txed.uscourts.gov |
| **Sent:** | Tuesday, February 27, 2018 4:06 PM |
| **To:** | txedcmcc@txed.uscourts.gov |
| **Subject:** | Activity in Case 2:16-cv-00535-RWS-RSP My Health, Inc. v. ALR Technologies, Inc. Notice of Hearing on Motion |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court [LIVE]

### Eastern District of TEXAS

### Notice of Electronic Filing

The following transaction was entered on 2/27/2018 at 4:06 PM CST and filed on 2/27/2018

| | |
|---|---|
| **Case Name:** | My Health, Inc. v. ALR Technologies, Inc. |
| **Case Number:** | 2:16-cv-00535-RWS-RSP |
| **Filer:** | |
| **WARNING: CASE CLOSED on 03/27/2017** | |
| **Document Number:** | No document attached |

**Docket Text:**
**NOTICE of Hearing on Motion [137] MOTION for Order to Show Cause *Why My Health Should Not Be Held In Contempt Of Court* : Motion Hearing set for 3/27/2018 01:30 PM before Magistrate Judge Roy S. Payne. (bga, )**

**2:16-cv-00535-RWS-RSP Notice has been electronically mailed to:**

Charles S Baker (Terminated)    cbaker@lockelord.com, sberman@lockelord.com

Charles Ainsworth    charley@pbatyler.com

Wasif H Qureshi    wqureshi@jw.com, mmcclenathen@jw.com

Daniel G Nguyen (Terminated)    dnguyen@lockelord.com

Daniel K Nazer    daniel@eff.org, daniel-nazer-2210@ecf.pacerpro.com, madeleine@eff.org, madeleine-mulkern-1669@ecf.pacerpro.com

Vera Ranieri     vera@eff.org, madeleine@eff.org, madeleine-mulkern-1669@ecf.pacerpro.com, vera-ranieri-9727@ecf.pacerpro.com

Joseph G Pia     joe.pia@pa-law.com, hdebusk@pa-law.com

Blake Thomas Dietrich     bdietrich@jw.com, pcollins@jw.com

Chrystal Mancuso-Smith     cmancuso@padrm.com, lbutler@padrm.com

"J" Jackson Shrum     jshrum@austriashrum.com, jackjshrum@hotmail.com

**2:16-cv-00535-RWS-RSP Notice will not be electronically mailed to:**