**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| MY HEALTH, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALR TECHNOLOGIES, INC., et al. <br><br> Defendant. | Lead Case No. 2:16-CV-00535-RWS-RSP |

**MY HEALTH, INC.'S OBJECTION TO ORDER [DKT. 131]**

**INTRODUCTION**

In accordance with the procedural history outlined below, and in an abundance of caution to preserve its appeal rights, Plaintiff My Health, Inc. ("My Health") respectfully objects to the December 20, 2017 finding of exceptionality under 35 U.S.C. § 285. Dkt. 131 ("Order"). My Health objects to the Order on four grounds: (1) the '985 patent was not so exceptionally weak as to weigh heavily in favor of a finding of fees; (2) My Health did not bring this suit, or prior suits, for the purpose of settling cases at nuisance values; (3) Defendants' post-judgment actions negate a fee award;[1] and (4) the amount of $371,862.95 in fees is unjustified given the early stage of the proceedings and that Defendants copied and pasted their arguments from public reexamination proceedings and from one brief to another.

**PROCEDURAL HISTORY**

On January 19, 2018, My Health filed a Notice of Appeal to the Federal Circuit from the Order. Dkt. 134. Defendants moved to dismiss the appeal under a theory of the equitable doctrine of appellate disentitlement, citing no case law. Dkt. 166-1. The appellate court denied Defendants' motion but issued an order to show cause why the appeal should not be dismissed for My Health's failure to lodge an objection with the District Court. Dkt. 158. My Health asserted that it was not required to object to the Magistrate Judge's opinion before filing an appeal since the order was styled as, and understood by all parties to be, final and because it did not include the required language informing My Health that any objection had to be filed within 14 days. *See* Dkt. 164-3. The Federal Circuit held that the fee order was not final under 28 U.S.C. § 1295(a)(1) and dismissed the appeal. Dkt. 162. The court noted, "[i]t may be true that such failure to notify [of the objection requirement] precludes a determination that My Health has waived any right to seek further review of the magistrate judge's decision in the district court or on appeal." *Id.* at 2; *see also Oleksy v. Gen. Elec. Co.*, 2017 WL 3446613 (Fed. Cir. Mar. 22, 2017) (for there to be waiver,

---

[1] This matter will be addressed in a Fed. R. Civ. P. 60(b) motion filed concurrently. Defendants' post-order conduct also supports overturning the fee award. *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prod., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015); Dkt. 166 at 7-9.

"a magistrate judge must inform the party about both the timeframe for filing objections and that waiver will follow from inaction."). On July 20, 2018, the Federal Circuit issued its formal mandate. Dkt. 165. My Health is unsure whether the Magistrate will re-issue the order as a report and recommendation with the mandatory notice and period to object, but files this objection out of an abundance of caution.

## ARGUMENT

### 1.  The Order erred in finding that the '985 patent was exceptionally weak.

The Magistrate found, and the District Judge affirmed with emphasis, that the '985 patent was invalid under 35 U.S.C. § 101. Dkts. 66, 78 ("On its face, [asserted] claim [1] is unquestionably abstract" and "does not come close to the subject-matter eligibility threshold.") However, not long before, this Court had denied a similar § 101 challenge to the '985 patent, finding that "while the claim language of some patents may be so clear that the court need only undertake a facial analysis to render it invalid at the pleading stage, that will not be the norm and *is certainly not the case here*." *My Health, Inc. v. LifeScan, Inc.*, No. 2:14-cv-000683-RWS-RSP ("LifeScan Litigation"), at *2-3 (E.D. Tex. Mar. 19, 2015) (emphasis added). This Court explained that "[t]he need for claim construction is especially apparent here, where Lifescan's invalidity argument is implicitly premised on its conclusions about the meanings of certain claim terms." *Id.* at 2. My Health proceeded to make those arguments during claim construction briefing. Dkt. 91-2 through 91-6.  Ultimately, the parties in that case settled prior to a claim construction hearing or order. LifeScan Litigation, Dkt. 35. The Federal Circuit has held:

> [D]isposition on § 101 is inappropriate at the summary judgment stage when there are genuine disputes of material fact as to whether elements of the challenged claims are well-understood, routine and conventional to a skilled artisan in the relevant field.

*Interval Licensing LLC v. AOL, Inc.*, No. 2016-2502, 2018 WL 3485608, at *n.4 (Fed. Cir. July 20, 2018) (citations omitted). In this case, there was a genuine issue as to whether elements of the challenged terms were well understood, routine, or conventional to physicians. Dkt. 17 at 18-30; Dkt. 28 at 6-9; *DietGoal Innovations LLC, v. Chipotle Mexican Grill, Inc.,* 2:12–cv–00764, 2015 WL 1284826 (E.D. Tex. March 20, 2015) (denying motion for exceptionality based, in part,

because the asserted patent was entitled to a presumption of validity, although the Court later found it was not patent eligible under § 101).

There have been a flurry of judicial opinions finding that a "reasonable litigant's" understanding of § 101 is far from settled.  Consequently, early dismissals based on § 101 invalidity should be given little weight in an exceptionality determination. *See, e.g., Interval Licensing LLC*, 2018 WL 3485608 (Plager, J., dissenting); *Telenit Technologies, LLC v. Alteva, Inc.*, No. 2:14-cv-00369 (E.D. Tex. Mar. 3, 2017) ("The Court's finding of invalidity under § 101 at a time when the law of § 101 was unsettled is not enough to make this case exceptional."); *Nexuscard, Inc. v. Brookshire Grocery Co.*, No. 2:15-cv-961 (E.D. Tex. Nov. 23, 2016) ("There is no precise test to determine the substantive strength of a litigant's position and when such position is objectively unreasonable."); *YYZ, LLC v. Pegasystems, Inc.*, No. 13-cv-581, (D. Del. May 2, 2016) ("[T]he § 101 analysis is an evolving state of the law and a difficult exercise, which does not lend itself to, *e.g.*, shifting fees pursuant to 35 U.S.C. § 285"). In *Interval Licensing LLC*, issued last week, Judge Plager's partial dissent articulated many problems facing courts under § 101.

> [W]hen two of our leading judges [J. Linn and J. Lourie] who have devoted their careers to the practice and explication of patent law publicly proclaim that there is a real problem, there is a real problem. . . . There is almost universal criticism among commentators and academicians that the 'abstract idea' idea has created havoc in the patent law. . . There has been a call for abolishing § 101 by the former head of the Patent and Trademark Office. . . . [The § 101 defense is a] shortcut way for alleged infringers to try for a quick dismissal on the grounds that the invention underlying the infringement suit was never entitled to a patent . . . This has the effect of ensuring a minimal record or virtually no record."

*Interval Licensing LLC,* 2018 WL 3485608, at *10 (Plager, J., dissenting).

The Order erred by rejecting My Health's *Alice/Mayo/DDR* analysis in favor of a comparison to similar patents to conclude "[s]uch claims have universally been found to be unpatentable under *Alice*." Dkt. 66 at 4. The Federal Circuit in *Interval Licensing* and a host of other cases have continued to undertake the traditional analysis. *See Interval Licensing LLC,* 2018 WL 3485608, at *10 (Plager, J., dissenting); *see* Dkt. 17. My Health's assertion of the '985 patent

was in good faith and does not merit an award of fees, especially given the uncertain and unpredictable state of § 101 jurisprudence.

### 2.  <u>The Order erred in finding that My Health brought this suit, and prior suits, for the purpose of settling cases at nuisance values.</u>

The Order incorrectly concludes that "My Health was filing lawsuits 'for the sole purpose of forcing settlements, with no intention of testing the merits of [the] claims.'" Order at 10, quoting *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015). The Order bases this conclusion on (a) the number of lawsuits filed by My Health, (b) My Health's settling of those lawsuits before a merits determination, (c) the similarity in the settlement awards, and (d) a finding that the settlement amounts were for a "nuisance" value. However, in this case (a) – (d) does not support an award of attorney's fees.

As the Order correctly notes, "a volume litigant does not automatically expose himself to attorneys' fees simply because he files a lot of lawsuits." Order 9. But My Health was not a volume litigant. It averaged 5 to 6 cases a year over several years. This is distinguishable from true volume litigants. *See eDekka LLC v. 3balls.com, Inc.*, 2015 WL 9225038 (E.D Tex. Dec. 17, 2015) (filing over 200 cases in a little over a year with numerous settlement offers for as low as $3,000 each). The unrebutted testimony of My Health's corporate officer, Michael Eiffert, is that the decision of who to enforce the patent against was based on "scouring publicly available documents" to identify and confirm its infringement position. Dkt. at 90-1 at ¶¶ 34-36.  Dr. Eiffert testified that the settlements were based on calculations on a case-by-case basis. Dkt. 90-1 at ¶¶ 34-35. He testified that royalty rates were "thoughtfully determined based upon the market size of the infringer and the anticipated revenue generated by the infringing product." *Id.*

The offers to the Defendants in this case were $950,000, $750,000 $495,000, and $68,500, and in some instances only offered upon Defendants' demand. My Health made no attempt to reduce or liquidate the cases for less even in the face of Defendants' § 101 challenge. These offers and the settlements from other cases were presented to the Court *in camera* at the § 285 fees hearing. They vary significantly, indicating a customized analysis in negotiation—some detail is

provided in the cover letters provided to the Court *in camera*. Defendants made no analysis under *Georgia-Pacific* or *Panduit* regarding a reasonable royalty. Finally, My Health was willing to test the merits of the patent. It fully briefed claim construction in *Lifescan*. It provided detailed claim charts to the defendants in this case, given to the Court at the § 285 fees hearing, representing hundreds of pages of color-coded analysis.

**3.  The award of $371,862.95 in fees is unjustified given the early stage of the proceedings and that Defendants mechanically copied and pasted their arguments from public reexamination proceedings and from one brief to the another.**

The Order erred by awarding Defendants fees for work billed at a $575/hr partner rate for activities that could easily and more reasonably have been performed by lower cost attorneys. "[A]wards of fees at rates exceeding $500 per hour are generally reserved for specialized tasks in complex cases that few attorneys are capable of handling." *SortiumUSA, LLC v. Hunger*, No. 3:11-cv-1656, 2015 WL 179025, at *9 (N.D. Tex. Jan 14, 2015).[2] Defendants' counsel re-used its work product in the filing of separate briefing in these cases (and from previous cases). *See* Dkt. 12, 25, Dkt. 13 from No. 2:16-cv-00536, Dkt. 12 from No. 2:16-cv-00866; Dkts. 21, 22, 41, 44.

The Order also erred by recommending an award of at least $58,855.50 in duplicative fees associated with Defendants' copy-and-pasted IPR petition. *The Chamberlain Group, Inc. v. Techtronic Inds. Co., Ltd.*, No. 16-cv-6097, at *92 (N.D. Ill. May 23, 2018) ("Fees related to a separate legal proceeding cannot be recovered."); *M-I Drilling Fluids UK Ltd. v. Dynamic Air Inc.*, No. 14-cv-4857, at *15-16 (D. Minn. Jan. 26, 2018) (denying fees associated with IPR because party sought concurrent review by the IPR instead of moving to stay district court litigation); *compare Click4Care, Inc. v. My Health Inc.*, IPR2014-00435 Paper 1 (PTAB Feb 14, 2014) *with McKesson Corp. v. My Health Inc.,* IPR2017-00312 Paper 2 (PTAB Nov. 29, 2016).

## CONCLUSION

Defendants request for attorney's fees should be denied or reduced.

---

[2] For instance, Defendants' counsel billed $575/hr to collect P.R 3-4 documents, revise a discovery order, revise a protective order, prepare a motion and proposed order for substitution of named defendant, prepare a motion to stay litigation in view of filed IPR (which was not filed), prepare discovery requests, answer the complaint, and finalize production. Dkt. 97, Exs. A-D.

DATED this 30th day of July, 2018.        Respectfully submitted,

_/s/ Joseph G. Pia_
PIA ANDERSON MOSS HOYT
136 East South Temple, Suite 1900
Salt Lake City, Utah 84111
Telephone: 801.350.9000
Facsimile: 801.350.9010

*Attorneys for Plaintiff My Health, Inc.*

6

## CERTIFICATE OF SERVICE

On July 30, 2018, I electronically submitted the foregoing **MY HEALTH, INC.'S OBJECTION TO THE ORDER (DKT. 131)** with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that, electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2), I have served all counsel of record.

*/s/ Hilda Echegaray*
Hilda Echegaray