IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **MY HEALTH, INC.** <br><br> v. <br><br> **ALR TECHNOLOGIES, INC.** | CASE NO. 2:16-cv-00535 (LEAD) |

**DEFENDANTS' OPPOSITION TO**
**MOTION TO WITHDRAW AS MY HEALTH'S COUNSEL (DKT. NO. 178)**

The Pia Firm's Motion at Dkt. No. 178 to unabashedly withdraw itself as My Health's counsel in the face of Judge Schroeder's Order (Dkt. No. 175) – which in adopting Judge Payne's § 285 Order (Dkt. No. 131) further confirms the Pia Firm's litigation misconduct in this case – smacks of contempt.[1,2] And the Pia Firm again, like with its initial motion at Dkt. No. 176, decided that it need not comply with the Court's meet-and-confer requirement. *See* Local Rule 7(h) ("An unreasonable failure to meet and confer violates Local Rule AT-3 and is grounds for disciplinary action."); Section V *infra*. Setting aside these latest acts of misconduct in now trying to hastily withdraw, the Pia Firm's Motion falls far short of any factual or legal standard warranting withdrawal.

**I.    LEGAL STANDARD**

"In agreeing to represent their client, counsel is expected to continue representation through

---

[1] My Health's prior local counsel withdrew believing "they have an obligation under the Texas Disciplinary Rules of Professional Conduct to withdraw from the representation of My Health, Inc." Dkt. No. 148 at 1.

[2] The Pia Firm initially misleadingly filed its motion as "unopposed" (Dkt. No. 176) – the Pia Firm never attempted to confer with Defendants prior to that motion and could only say that "My Health has not indicated to [the Pia Firm] that it opposes the filing of the motion." Dkt. No. 176, at 1.

completion of the case." *Geotag, Inc. v. Frontier Comms. Corp., et al.*, 2:10-cv-00265 (lead), Dkt. No. 303 at 15 (Order Denying Motions to Withdraw as Counsel) (E.D. Tex. Aug. 30, 2012) (Schneider, J.) (citing Tex. Disciplinary R. Prof'l Conduct 1.15 cmt. 1). "In addition to the duties counsel owes to its client, counsel 'must be ever conscious of the broader duty to the judicial system that serves both attorney and client.'" *Id*. (quoting Local Rule AT-3(a)). The Court can deny counsel's request to withdraw, even when counsel has good cause. *See* Tex. Disciplinary R. Prof'l Conduct 1.15(c). Moreover, the standard for withdrawal is further heightened when no other counsel has appeared as substitute counsel, even in cases of severe financial hardship. *See Geotag*, Dkt. No. 303 at 15 (citing *Talasila, Inc. v. United States*, 240 F.3d 1064, 1066 (Fed. Cir. 2001)).

## II. THE PIA FIRM CANNOT RUN AWAY FROM THE SCENE IT CAUSED

Judge Schroeder ordered My Health to pay defendants' attorneys' fees by December 31, 2018. Dkt. No. 175, at 9-10. And now, conveniently, the Pia Firm wants out. Suffice it to say, the Pia Firm should not be allowed to engage in exceptional litigation misconduct under 35 U.S.C. § 285 – including numerous, documented misrepresentations to this Court and the Federal Circuit – and then withdraw in hope to skirt the consequences stemming from that conduct, especially here where the Court has ordered those consequences. The Pia Firm's Motion essentially asks the Court to simply disregard the Pia Firm's litigation misconduct, which has continued since Judge Payne's December 2017 § 285 Order (Dkt. No. 131) to this day. *See, e.g.*, Dkt. Nos. 137, 144-146 (Defendants' Motion for Order to Show Cause); Dkt. No. 150 (Defendants' motion discussing misleadingly redacted checking account statement as supporting "Defendants' suspicions that My Health and at least Dr. Eiffert have comingled funds and conducted activity to hinder, delay, or defraud the Court's Fees Order, including prior to that order when My Health knew Defendants were seeking fees (stemming from My Health's prior representations to the Court that it could pay the sought fees)").

### III. THE PIA FIRM'S CLAIM OF NOT BEING PAID IS AN UNSUBSTANTIATED RUSE

In its Motion, the Pia Firm claims that it "has not been paid its attorneys' fees, and it appears that My Health will be unable to make payments in the future." Dkt. No. 178, at 1. This claim is highly suspect and at best incomplete given that the Pia Firm is known to represent non-practicing, empty shell entities like My Health on contingency. *See SyncPoint Imaging, LLC v. Nintendo of America Inc., et al.*, No. 2:15-cv-00247-JRG-RSP, Dkt. No. 297, at 26 (E.D. Tex. Feb. 26, 2018). It is also questionable that the Pia Firm would state "it appears that My Health will be unable to make payments in the future" because that suggests My Health was able to and was making payments before (and hence why the Pia Firm did not previously try to withdraw) – then why have My Health and the Pia Firm claimed to have no money to satisfy any portion of the Judge Payne's December 2017 fees award?[3]

At bottom, the alleged basis in the Pia Firm's Motion regarding My Health's ability to pay is unsubstantiated. "The record must generally reflect an appropriate basis for granting leave; unsubstantiated claims are insufficient." *U.S. Enercorp, Ltd. v. SDC Montana Bakken Exploration, LLC, et al.*, No. SA:12–CV–01231–DAE, 2013 WL 1966882, at *1 (W.D.Tex. May 10, 2013) (citing *Streetman v. Lynaugh*, 674 F. Supp. 229, 235 (E.D. Tex. 1987) (denying attorney's motion to withdraw where the attorney made only unsupported claims of a conflict of interest)). Here, the Pia Firm's statements regarding the payment of its fees, aside from the questionable nature of those claims given the believed contingency fee and asset commingling relationship with My Health, are deficient, self-serving, unsubstantiated, and conclusory. *See*

---

[3] Further, there is evidence that My Health and the Pia Firm have been commingling assets (or at least use of assets) for some time, making the Pia Firm's "My Health inability to pay" argument just days after Judge Schroeder's Order even more suspect. Indeed, Mr. Adam Hoyt – a partner at the Pia Firm – is listed as a My Health credit card holder, as disclosed to the Court in March 2018. Dkt. No. 141, Exh. B to Exh. 1 to Dkt. No. 140.

*F.T.C. v. Intellipay, Inc.*, 828 F. Supp. 33, 34 (S.D. Tex. 1993) (denying a motion to withdraw where the attorney failed to elaborate on his claim that there was a lack of communication with his clients). In any event, the timing of the Pia Firm's allegations now regarding My Health's ability to pay the Pia Firm further casts incredulity as the Pia Firm – which has represented My Health from well before its suit against Defendants – has known My Health's financial situation. *See, e.g.*, n.3 *supra*.

### IV. THE PIA FIRM CANNOT DIVORCE ITSELF FROM MY HEALTH

The Pia Firm also points to Dr. Eiffert, My Health's sole corporate officer, as still having counsel of record in this case. Dkt. No. 178, at 1-2. As such, the Pia Firm's logic would confirm that My Health equals Dr. Eiffert – and hence why Dr. Eiffert should be made jointly and severally liable to pay the fees award. *See* Dkt. No. 137, at 4-7. Regardless, simply pointing to Dr. Eiffert as having counsel does not replace the Pia Firm's duty to ensure and sufficiently detail to the Court that My Health will continue to be represented. Additionally, the Pia Firm has represented My Health from before the inception of its cases against Defendants and has been directly involved in the various issues, filings, and appeals implicated in Judge Schroeder's Order, the knowledge of which would be relevant to, among other things, a supplemental award of Defendants' fees incurred since Judge Payne's § 285 Order (Dkt. No. 131), proceedings stemming for failure to comply with Judge Schroeder's Order, an appeal of that order, and joinder of the Pia Firm as jointly and severally liable to pay Defendants' attorneys' fees under 28 U.S.C. § 1927. *See* Dkt. No. 137 (detailing the Pia Firm's litigation misconduct and contempt of legal process in this case).

The Pia Firm can only go as far as stating that My Health has not indicated that it opposes. Dkt. No. 178, at 1. The fact that the Pia Firm cannot confirm that My Health consents

4

to the sought withdrawal means that the Pia Firm must provide the Court with an even more compelling reason to permit withdrawal. *See Stafford v. Mesnick*, 63 F.3d 1445, 1448 (7th Cir. 1995) ("The attorney seeking to withdraw must establish that his client consents or that a valid and compelling reason exists for the court to grant the motion over an objection."). The Pia Firm clearly has not met this burden, and its latest representations only raise more suspicion.

V. THE PIA FIRM'S CERTIFICATE OF CONFERENCE

Finally, the Certificate of Conference in the Pia Firm's Motion (Dkt. No. 178, at 3) is rife with misrepresentations and innuendo. To juxtapose with the actual facts, the correspondence between the Pia Firm and the undersigned is provided at Exhibit A hereto. The Pia Firm filed its motion three hours after it sent an e-mail to the undersigned requesting a meet-and-confer[4] – the Pia Firm did not wait for a response even though its proposed time for the meet-and-confer was days from its request. Contrary to what the Pia Firm suggests, nowhere in the correspondence did the undersigned impliedly or explicitly state that it would not meet-and-confer with Mr. Chadwick because he is an "associate." Nowhere in the correspondence did the undersigned "reject[ ]" a meet-and-confer or demand that lead counsel appear – the undersigned simply asked that the meet-and-confer be between counsel of record (the Pia Firm having three such attorneys) who would be knowledgeable about the basis for the motion. Moreover, it is hypocritical for the Pia Firm to claim that it could not earlier meet-and-confer because Mr. Pia "was out of the office" but then take issue with the undersigned not immediately responding to the Pia Firm's meet-and-confer request sent shortly before the close of business. And revealingly, the Certificate of Conference exposes what appears to be the real basis for the Pia Firm wanting to

---

[4] The Pia Firm only reached out because Defendants at Dkt. No. 177 called out the Pia Firm for not even trying to meet-and-confer when it initially filed its motion. *See* n.2 *supra*.

withdraw: its concern that Defendants will file additional motions. That can hardly be a reason for a law firm to withdraw – instead, that supposed concern actually emphasizes why My Health should not be left unrepresented.

## VI.     CONCLUSION

Accordingly, in view of the above, the Pia Firm's motion to withdraw should be denied and the Pia Firm should be held to account for its continued litigation misconduct here in trying to expedite its extraction from this case to avoid consequences flowing from its continued litigation misconduct and Judge Schroeder's Order.

Dated: December 19, 2018 Respectfully submitted,

By: /s/ *Wasif H. Qureshi*

Wasif H. Qureshi
Texas State Bar No. 24048155
wqureshi@jw.com
**JACKSON WALKER LLP**
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4521

Blake T. Dietrich
Texas State Bar No. 24087420
bdietrich@jw.com
**JACKSON WALKER LLP**
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000

**COUNSEL FOR DEFENDANTS ALR TECHNOLOGIES, INC., INTOUCH TECHNOLOGIES, INC., MYNETDIARY, INC., AND MCKESSON TECHNOLOGIES INC.**

"J" Jackson Shrum
jshrum@austriashrum.com
**AUSTRIA SHRUM LLP**
One Commerce Center
1201 North Orange Street, Suite 502
Wilmington, DE 19801
Ph: 302-543-7551
Fax: 302-543-6386
Direct: 609-367-2430

**COUNSEL FOR DEFENDANT MYNETDIARY, INC.**

## CERTIFICATE OF SERVICE

    The undersigned certifies that on December 19, 2018 the foregoing document and accompanying papers were served on all counsel of record via the Court's electronic filing system.

/s/  *Wasif H. Qureshi*
Wasif H. Qureshi