IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **MY HEALTH, INC.** | |
| **v.** | **CASE NO. 2:16-cv-00535 (LEAD)** |
| **ALR TECHNOLOGIES, INC.** | |

**DEFENDANTS' MOTION FOR JOINDER OF THE PIA FIRM
AND MICHAEL EIFFERT**

In apparent effort to avoid compliance with Judge Schroeder's (now-violated) Order at

Dkt. No. 175, My Health and its outside counsel Pia Anderson Moss Hoyt, LLC ("the Pia Firm")

have endeavored to distance themselves from their adjudged exceptional misconduct in this case.

Indeed, on one hand, despite previously being championed as the sole corporate officer and

effective alter-ego of My Health, Dr. Michael Eiffert now informs the undersigned through his

separate counsel that he does not have involvement or control in My Health. *See* Qureshi

Certificate of Conference *infra*. On the other hand, the Pia Firm at Dkt. No. 178 has moved to

withdraw as counsel for My Health without My Health's consent, and in so moving suggests that

My Health would still be represented through Dr. Eiffert's counsel (even though Dr. Eiffert, as

mentioned above, is supposedly not involved in My Health). With no evidence provided by the

Pia Firm or Dr. Eiffert suggesting otherwise, it seems clear what is going on here: the Pia Firm

and Dr. Eiffert are passing the buck in hope to avoid the consequences of their transgressions.

It should not be so easy for a party's sole principal and outside counsel to each

unilaterally absolve themselves after years of litigation misconduct. Either or both the Pia Firm

and Dr. Eiffert – and no one else, including the guise of empty shell My Health, Inc. – are

responsible for the misconduct in this case which led to the Court's exceptional finding and

award of Defendants' fees (Dkt. Nos. 131, 175). Accordingly, Defendants hereby move to join the Pia Firm and Dr. Eiffert as third parties to this case, at least for purposes of being jointly and severally liable for payment of Defendants attorneys' fees.[1,2,3,4]

## I.     BRIEF BACKGROUND

On December 20, 2017, the Court found this case exceptional and awarded Defendants their attorneys' fees. *See* Dkt. No. 131. My Health made no attempt to pay any portion of the awarded fees and instead appealed to the Federal Circuit without payment of any bond or request to stay the Court's directive to pay Defendants' attorneys' fees. On appeal, the Federal Circuit ordered My Health to show cause why its appeal should not be dismissed for failure to object to Judge Payne's decision. Dkt. No. 158. After briefing, the Federal Circuit found Judge Payne's decision to be non-final and dismissed My Health's appeal for lack of jurisdiction. Dkt. No. 162. My Health then – and only after Defendants' notice of My Health's failure filed at Dkt. No. 164 – belatedly filed objections to Judge Payne's decision and at the same time sought to modify that decision under Rule 60(b) as a "final [] order" even though the Federal Circuit specifically had

---

[1] Defendants also request that they be allowed to submit additional information regarding fees incurred since the amount specified in Dkt. No. 175, which fees amount was current as of April 10, 2017, when Defendants' initial § 285 motion was filed (Dkt. No. 81).

[2] Defendants have also concurrently filed at Dkt. No. 183 a motion for order to show cause why My Health should not be held in contempt for failure to comply with Judge Schroeder's Order.

[3] Defendants note that they filed a similar motion at Dkt. No. 137 as a result of My Health's earlier failure to comply with Judge Payne's decision at Dkt. No. 131. But a decision on that motion was deferred pending My Health's appeal of Judge Payne's decision (Dkt. No. 147), which appeal was subsequently dismissed by the Federal Circuit (Dkt. No. 162). In view of the Federal Circuit's order that Judge Payne's ruling was not a "final [ ] decision" (Dkt. No. 162 at 2), Defendants withdrew their motion at Dkt. No. 137 but reserved the right to later re-urge that motion (Dkt. No. 172 at 2), which it now does here.

[4] Defendants welcome a hearing on this and any other pending motions in this case. However, Defendants note that its undersigned counsel is not available January 28-31, 2019 due to travel and court commitments in another case.

ruled that the decision was not final. Dkt. Nos. 167, 168. On November 30, 2018, Judge

Schroeder overruled My Health's objections, rejected My Health's attempt to modify Judge

Payne's decision, and finally awarded Defendants the fees specified in Judge Payne's then nearly

one-year old decision. Dkt. No. 175.

My Health was required to pay the awarded fees within 30 days. *Id.* at 10. To date, well

past the December 31, 2018 deadline for compliance, My Health has made no effort to pay any

or all of the awarded amount. Nor has My Health appealed Judge Schroeder's Order.

## II.   THE PIA FIRM AND DR. EIFFERT SHOULD BE JOINED

> Courts do not sit for the idle ceremony of making orders and pronouncing
> judgments, the enforcement of which may be flouted, obstructed, and violated with
> impunity, with no power in the tribunal to punish the offender. [Federal] courts,
> equally with those of the state, are possessed of ample power to protect the
> administration of justice from being thus hampered or interfered with.

*Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) (quoting *Lineker v. Dillon*, 275 F.

460 (N.D. Cal. 1921). Moreover, this Court has the inherent power to sanction conduct across "a

full range of litigation abuses" not only by parties, ***but also non-parties that are closely tied to***

***the litigation***. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 46 (1991); *Iris Connex, LLC v.*

*Dell, Inc.*, 235 F.Supp.3d 826, 858-59 (E.D. Tex. 2017) (discussing cases supporting sanctions

against non-parties).

Here, it is indisputable that Dr. Eiffert – My Health's Founder, President, CEO and first

named inventor on the asserted patent – has been championed as the key corporate principal

behind My Health's litigation campaign, stood to financially benefit in this case, and

substantially participated in these proceedings. *See, e.g.*, Dkt. No. 90 at 4-5; Exh. 1 (Declaration

of Michael Eiffert). Similarly, Mr. Pia and his firm have substantially participated in this case

and is responsible for various instances of litigation misconduct which this Court found

sufficiently egregious to warrant the awarded fees, even before additional acts of misconduct

after that award (further discussed below). Mr. Pia cannot simply claim that he and his firm acted solely on instruction of their empty shell corporate client – it was incumbent on Mr. Pia as an officer of the Court to not make misrepresentations or otherwise mislead the Court, and to obey its rules and orders. It appears clear – and the Pia Firm and Dr. Eiffert have not made any showing otherwise – that they have been the only actual actors behind My Health in this case.[5] Thus, the Pia Firm and Dr. Eiffert should be joined as third parties at least under Fed. R. Civ. P. 19 and the Court's inherent powers.[6] *See Iris Connex, LLC v. Dell, Inc.*, No. 2:15-cv-01915-JRG, Dkt. No. 74 at 1-2 (E.D. Tex. Dec. 6, 2016) (joining as third parties plaintiff's corporate principals and outside counsel).

The Pia Firm and Dr. Eiffert's litigation misconduct has been pervasive throughout this case and, despite the various findings of exceptionality and rebukes in Judge Payne's initial fees decision (Dkt. No. 131), has continued for over a year since:

- Unethically, repeatedly, and directly contacting knowingly represented parties in effort to scare up settlement payments. *See* Dkt. No. 131 at 11.

- Taking adjudged "implausible" positions on the merits of an "unquestionably abstract" patent. *See* Dkt. No. 78, at n.4, 4-5; Dkt. No. 66 at 3, 6.

- Seeking over $2 million from Defendants to settle litigation on a patent that to "any litigant" was "manifestly directed to an abstract idea." *See* Dkt. No. 131 at 8.

- Demanding an almost $1 million settlement from Defendant McKesson Technologies despite being informed by the undersigned that the accused

---

[5] To the extent the Pia Firm or Dr. Eiffert claim that they were/are not responsible for the activities of My Health, Defendants request that the Court order discovery on that claim. *See Iris Connex, LLC v. Dell, Inc.*, 235 F.Supp.3d 826, 837 (E.D. Tex. 2017) ("Simply put, it appeared to the Court that there must be a real but hidden party in interest. These troubling allegations supported the unusual step of ordering targeted post-judgment discovery in this case.").

[6] Defendants note that the Pia Firm and Dr. Eiffert, in various responses to Defendants' initial joinder motion at Dkt. No. 137, have taken the opportunity to be heard on the issue of whether they should be joined.

product was purchased from a licensed entity, to which notice the Pia Firm never responded. *See id*. at 5.

▪ "My Health's counsel representing that the hearing on the fees motions should be continued because of a conflict that was in fact no conflict at all." *Id*. at 6, 12.

▪ Arguing that the Court should stay its decision on Defendants' fees motion because My Health filed a notice of appeal on the Court's § 101 decision, but then dismissing the appeal after the Court denied My Health's stay motion. *See id*. at 5-6, 11-12.

▪ Falsely representing to the Federal Circuit that the parties had met and conferred, agreed to dismiss the appeal on the Court's § 101 decision, and agreed that each side would bear their own costs. *See id*. at 12 ("That appears to have been untrue. [ ] My Health has never offered a satisfactory explanation for the misrepresentation.").

▪ Submitting only 23 of "more than 50" settlement/license agreements in defiance of Court's order to submit "all" agreements. *See* Aug. 15, 2017 Hr. Tr., 66:15-22; Dkt. No. 118; Dkt. No. 124, at ¶ 8 (citing Exh. E thereto).

▪ On February 6, 2018, falsely representing to the Federal Circuit that "Defendants are unwilling to compromise" (Dkt. No. 137, Exh. B at 2) when undersigned on January 15, 2018 specifically wrote to Mr. Pia that "[w]e [ ] await the fees payment proposal you said you would send us" and "*we remain open to considering whatever proposal you may have*, and we hope to receive that from you at the earliest." Dkt. No. 137, Exh. A at 2 (emphasis added).

▪ Failing to comply with Judge Payne's directive to pay Defendants' attorneys' fees by February 20, 2018 (60 days from order), even though My Health and the Pia Firm represented to this Court that "there is no . . . basis to allege that My Health will be unable to pay an award of reasonable attorneys' fees" (Dkt. No. 89 at 7). *See also* Dkt. No. 175 at 2 (Judge Schroeder also recognizing that My Health sought to stay Defendants' § 285 motion on the basis that My Health could later pay the sought attorneys' fees).

▪ Filing a misleadingly redacted checking account statement in effort to persuade the Court about My Health's purported inability to pay. *See* Dkt. No. 150 at 2.

▪ Like when it falsely represented to the Federal Circuit that the parties had conferred and agreed to dismiss My Health's appeal on the Court's § 101 decision (Dkt. No. 131 at 12), the Pia Firm filing a motion to withdraw itself as counsel for My Health as "unopposed" even though the Pia Firm had made no attempt to previously confer with Defendants (Dkt. No. 177 at 1-2). Although the Pia Firm withdrew that motion after Defendants called out the Pia Firm's improper designation of the motion as "unopposed," the Pia Firm nonetheless

refiled its motion without conferring with Defendants as required. Dkt. No. 179 at 5-6.

In view of the pattern of litigation misconduct in their frivolous case, misleading dealings with this Court, the Federal Circuit, and Defendants, and repeated defiance of the Court's orders and rules, the Pia Firm and Dr. Eiffert should not now be allowed to hide behind the empty shell that is My Health, Inc., which appears to have been created by the Pia Firm and Dr. Eiffert only as a vehicle to monetize its "unquestionably abstract" patent (Dkt. No. 66 at 3).

Mr. Pia and his firm should be joined and held liable for his role in the frequent litigation misconduct he has been responsible for, or at minimum, has allowed to happen as lead counsel for My Health. As this Court again reminded Mr. Pia, Fed. R. Civ. P. 11 requires an attorney to act truthfully. *See* Dkt. No. 131 at 12. But the Pia Firm's continued conduct can only be interpreted as blatant disregard of the purpose behind Rule 11 and of the Court's orders and rules. Indeed, the Pia Firm's conduct in this case goes far beyond advancing a frivolous legal claim, which Judge Gilstrap found by itself sufficient to warrant sanctions. *Iris Connex*, 235 F.Supp.3d at 857. And similar to the fact pattern in *Iris Connex*, Mr. Pia in this case has continued in his ways even after being rebuked by the Court and the undersigned warning Mr. Pia that "[Defendants] may have to seek recourse against you and your firm in support of collecting the fees awarded to defendants (and any additional fees incurred in furtherance of that outcome)." Dkt. No. 137, Exh. A at 2, 3 ("you need to escrow an acceptable appeal bond amount, and absent such, we will seek to enforce the district court order in addition to seeking other relief"); *Iris Connex*, 235 F.Supp.3d at 857. As such, the Pia Firm should also be made jointly and severally liable to pay Defendants' attorneys' fees under 28 U.S.C. § 1927.

Dr. Eiffert should be joined and held liable for the fees award for similar reasons as discussed in Judge Gilstrap's decision in *Iris Connex. See Iris Connex*, 235 F.Supp.3d at 843-44

("the corporate form cannot be used as a shield to insulate officers and parent corporations against liability for their own tortious conduct or tortious conduct they control") (citations omitted). Dr. Eiffert's contempt of process is highlighted by his position now that he has no involvement or control in My Health – that position is a far cry from My Health's previous efforts to rely on Dr. Eiffert, including under oath, as the face and sole officer of My Health who was intimately involved in My Health's litigation efforts. *See* Dkt. No. 90 at 4-5; Exh. 1 (Declaration of Michael Eiffert); Dkt. No. 143-1 (Declaration of Michael Eiffert regarding My Health); Dkt. No. 143-4 (Declaration of Michael Eiffert).

Defendants additionally note what appears to be the Pia Firm and Dr. Eiffert's joint access to and use of My Health's business card, further evidencing that My Health was just a fiction created to serve as a financial vehicle for the Pia Firm and Dr. Eiffert:

Dkt. No. 141, Exh. B to Exh. 1 to Dkt. No. 140 (clearly listing Dr. Eiffert and A. Hoyt (seemingly referring to partner Adam Hoyt at the Pia Firm) as joint business account holders for

My Health, Inc.). This only further bolsters Defendants' request that the Pia Firm and Dr. Eiffert should be held jointly and severally liable for the liabilities the Court has levied and may further impose in this case.

Tellingly, other than unsubstantiated attorney argument, the Pia Firm has not provided any evidence – *e.g.*, in the form of communications or declarations – to suggest that the Pia Firm should not be joined as an actor directly involved in the control and activities of My Health. The likely reason for the Pia Firm's failure to provide such evidence is that it does not exist – and the risk of transparency into the relationship between the Pia Firm and My Health would seal the Pia Firm's fate.[7]

## III.   CONCLUSION

Accordingly, in view of the above, Defendants respectfully request that the Court:

(i)     join the Pia Firm and Dr. Eiffert as third parties, at least for purposes of being jointly and severally liable for payment of Defendants' attorneys' fees;

(ii)    order My Health to identify any and all other individuals or entities who have had authority, direction, and/or control of My Health in this case;

(iii)   order additional payment of Defendants' attorneys' fees and costs incurred since Defendant's initial calculation of fees (at Dkt. No. 81) (which accounting of fees and costs Defendants will provide); and

(iv)    at least to effect deterrence, impose sanctions on Mr. Pia for his repeated litigation misconduct.

---

[7] *See* n.5 *supra*.

Dated: January 17, 2019

Respectfully submitted,

By: /s/ *Wasif H. Qureshi*

Wasif H. Qureshi
Texas State Bar No. 24048155
wqureshi@jw.com
**JACKSON WALKER LLP**
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4521

Blake T. Dietrich
Texas State Bar No. 24087420
bdietrich@jw.com
**JACKSON WALKER LLP**
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000

**COUNSEL FOR DEFENDANTS ALR
TECHNOLOGIES, INC., INTOUCH
TECHNOLOGIES, INC., MYNETDIARY, INC., AND
MCKESSON TECHNOLOGIES INC.**

"J" Jackson Shrum
AUSTRIA SHRUM, LLC
One Commerce Center
1201 North Orange Street, Suite 502
Wilmington, DE 19801
Ph: 302-543-7551
Fax: 302-543-6386
Direct: 609-367-2430
E-mail: jshrum@austriashrum.com

**COUNSEL FOR DEFENDANT MYNETDIARY, INC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 17, 2019 the foregoing document was served on all counsel of record via the Court's electronic filing system.

/s/  *Wasif H. Qureshi*
Wasif H. Qureshi

## CERTIFICATE OF CONFERENCE

On January 8, 2018, I spoke by phone with Charlene Koonce of Scheef & Stone, counsel for Michael Eiffert. I informed Ms. Koonce of the joinder sought in the foregoing motion and the general basis for same. Ms. Koonce responded that Dr. Eiffert does not have involvement or control in My Health and that he opposes the motion. Ms. Koonce also confirmed that her firm represents Dr. Eiffert individually and does not serve as counsel for any other entity involved in this case, including My Health.

On January 11, 2018, I spoke by phone with Joseph Pia of Pia Anderson Moss Hoyt, LLC, lead counsel for My Health. I informed Mr. Pia of the joinder sought in the foregoing motion and the general basis for same. Mr. Pia responded that he opposes the motion.

/s/  *Wasif H. Qureshi*
Wasif H. Qureshi