IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MY HEALTH, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 2:16-cv-00535-RWS-RSP |
| ALR TECHNOLOGIES, INC., et al., | § § § | |
| *Defendant*. | § § | |

## **MEMORANDUM OPINION AND ORDER**

This case is one of several patent infringement actions filed by Plaintiff My Health, Inc. ("My Health") in May 2016. For three years the parties have battled over the patent-in-suit (U.S. Patent No. 6,612,985) (the "'985 Patent"), with My Health contending that Defendants infringed the patent, while Defendants attacked the patent's invalidity under 35 U.S.C. § 101. Defendants were early victors in this action, prevailing on their motion to dismiss pursuant to 35 U.S.C. § 101. (Dkt. Nos. 66 and 68). After this Court declared the patent-in-suit invalid for failure to claim patent-eligible subject matter, Defendants sought attorneys' fees under 35 U.S.C. § 285.

My Health appealed the § 101 decision (Dkt. No. 85) and asked the Court to stay Defendants' § 285 motion pending the appeal (Dkt. No. 89). In requesting the stay, My Health argued that there "is no allegation or basis to allege that My Health will be unable to pay an award of reasonable attorneys' fees following a ruling from the Federal Circuit should My Health lose the appeal." (*Id.* at 7). This Court declined My Health's request to stay (Dkt. No. 98), and went on to declare this case exceptional under § 285 (Dkt. No. 131) (the "§ 285 Order). Plaintiff dismissed the appeal with the Federal Circuit. My Health was ordered to pay Defendants' attorneys' fees

1

within 60 days of the Order, entered on December 19, 2017. (*Id.* at 13). Instead of paying, My Health appealed the Court's § 285 Order. Because My Health did not first object to the District Judge for review of the § 285 Order, the Federal Circuit dismissed the appeal for lack of jurisdiction. (Dkt. No. 162).

My Health then submitted objections to the § 285 Order to the District Judge, arguing that this case was not exceptional. (Dkt. No. 167). My Health also, alternatively, sought relief from the § 285 Order, asking the District Judge to deem this case as exceptional but to deny any award of fees because "Defendants will suffer no prejudice where, as a practical matter, My Health simply is incapable of paying the fees award." (Dkt. No. 168 at 7). The District Judge overruled the objection, adopted the § 285 Order, denied My Health's request for relief from the § 285 Order, and ordered My Health to pay Defendants' counsel within 30 days of the Order, entered on November 30, 2018. (Dkt. No. 175). My Health has yet to pay Defendants' attorneys' fees.

Defendants now come seeking to collect their fees, not only from My Health, but from My Health's law firm, Pia Anderson Moss Hoyt LLC ("PAMH"), and My Health's sole officer, Dr. Michael Eiffert. PAMH seeks to withdraw as counsel for My Health (Dkt. No. 179), contending that My Health has failed to pay its attorneys' fees to PAMH. Defendants not only oppose this withdrawal (Dkt. No. 179), but also move to join PAMH and Dr. Eiffert under the premise that either or both of these non-parties are responsible for the conduct cited in this Court's § 285 Order (Dkt. Nos. 182 and 230). Defendants also seek an order to show cause why My Health should not be held in contempt of Court for failing to pay their attorneys' fees. (Dkt. No. 183).

**DISCUSSION**

*A. Defendants' Joinder Motion*

Federal Rule of Civil Procedure 19 provides for joinder of required parties. Rule 19(a) states, in relevant part:

> (a) Person to be Joined if Feasible.
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). Joinder of an additional party is mandatory only under the circumstances described in 19(a). The movant bears the initial burden of demonstrating that an absent party is necessary. *Hood ex rel. Mississippi v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). When "an initial appraisal of the facts indicates that a possible necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986).

Defendants argue that PAMH and Dr. Eiffert should be joined, post-judgment, "as third parties to this case, at least for purposes of being jointly and severally liable for payment of Defendants' attorneys' fees." (Dkt. No. 182 at 2). Defendants assert that joinder of PAMH and Dr. Eiffert is necessary because they are either individually or jointly responsible for the conduct that made this case exceptional and that My Health was created as a fiction for PAMH and Dr. Eiffert. (*Id.* at 1, 7). Defendants contend that "[i]n view of the pattern of litigation misconduct in their

3

frivolous case, misleading dealings with this Court, the Federal Circuit, and Defendants, and repeated defiance of the Court's orders and rules, the Pia Firm and Dr. Eiffert should not now be allowed to hide behind the empty shell that is My Health, Inc., which appears to have been created by [PAMH] and Dr. Eiffert only as a vehicle to monetize its 'unquestionably abstract' patent." (*Id.* at 6).[1] Defendants further asks the Court to order additional payment of their attorneys' fees and costs incurred since the § 285 Order was issued, to permit post-judgment discovery to further explore the misconduct, and to impose sanctions on Joseph G. Pia. (*Id.* at 4, 8).

### *1. Defendants' Joinder Request*

The Court cannot grant Defendants' joinder request procedurally or on the merits.

#### *a. Procedure*

The joinder request misses the procedural mark in two ways. First, Defendants essentially ask this Court to both join PAMH and Dr. Eiffert and alter the final judgment in a single stroke. Defendants do not engage in the necessary analysis either as to (1) the propriety of adding PAMH or Dr. Eiffert under Federal Rule of Civil Procedure 19, or (2) the propriety of altering the Court's judgment. Their request is contrary to established precedent. *See Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000) (holding that a district court erred by adding the president and shareholder of the plaintiff corporation and simultaneously amending the judgment to impose liability for attorney's fees without giving him an opportunity to challenge that imposition). Second, Defendants did not seek attorneys' fees from PAMH or Dr. Eiffert in their initial motion to declare this case exceptional (Dkt. No. 81), nor did Defendants appeal the Court's § 285 Order to the Federal Circuit for not entering the fee award against PAMH or Dr. Eiffert. Accordingly, Defendants' arguments should be considered waived.

---

[1] The Court assumes Defendants characterize My Health as an "empty shell" due to the fact that My Health is insolvent. (*See* Dkt. No. 194-1 at ¶¶ 33-34).

*b. Merits*

Defendants' request will not win this battle on the merits.

As to PAMH, Defendants provide no legal basis for a fee award against My Health's counsel under § 285. Indeed, the Federal Circuit has declined to find counsel liable for fees awarded under § 285. *See Phonometrics, Inc. v. ITT Sheraton Corp.*, 64 F. App'x 219, 222 (Fed. Cir. 2003) ("Section 285 is a fee shifting statute that in exceptional cases may require the losing party to reimburse the prevailing party its attorney fees. Sheraton has provided us with no legal basis for entering a fee award against the losing party's attorney under § 285. […] Counsel for Phonometrics is not liable for fees awarded under § 285; it can only be liable for excess fees awarded under § 1927."). Given this guidance, the Court cannot enter a § 285 award against PAMH.

As to Dr. Eiffert, Defendants have not shown an abuse of the corporate structure under Texas law. *See SSP Partners v. Gladstrong Investments (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008). Under Texas law, there are six situations in which a court may disregard the corporate form:

(1) when the fiction is used as a means of perpetrating fraud;
(2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;
(3) where the corporate fiction is resorted to as a means of evading an existing legal obligation;
(4) where the corporate fiction is employed to achieve or perpetrate monopoly;
(5) where the corporate fiction is used to circumvent a statute; and
(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Flores v. Bodden*, 488 F. App'x 770, 776 (5th Cir. 2012) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986), *superseded on other grounds by* Tex. Bus. Orgs. Code § 21.223).). When a plaintiff seeks to pierce the corporate veil to impose liability for a tort not arising out of a contract, the Texas Supreme Court's decision in *Castleberry* remains controlling, which means

5

proof of constructive fraud will suffice to pierce the corporate veil. *See S-Line LLC v. B2B Supply*, No. 3:14-CV-2284-M, 2015 WL 4745069, at *5 (N.D. Tex. Aug. 10, 2015).

Here, Defendants argue that My Health is a sham to perpetrate a fraud, and thus the corporate veil must be pierced to hold Dr. Eiffert personally liable for the § 285 award. (Dkt. No. 182 at 7). To pierce the corporate veil by showing the corporate form is being used as a sham to perpetrate a fraud, the movant must show constructive fraud. *See Castleberry*, 721 S.W.2d at 273. Constructive fraud is the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964). Defendants make no showing of constructive fraud other than to draw an unsuccessful comparison of Dr. Eiffert to the managers and shareholders in *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826. (E.D. Tex. 2017). While it true that an individual officer of a corporation may be joined in his or her sole capacity based on that officer's conduct, *see Ohio Cellular Products Corp. v. Adams USA, Inc.*, 175 F.3d 1343 (Fed. Cir. 1999), *Iris Connex* involved facts that are simply not present in this case. The wrongdoers in *Iris Connex* "abuse[d] the judicial process through the creation of shell entities to facilitate the assertion of a large number of meritless claims as part of a scheme to avoid the risks that Section 285 creates." *Iris Connex*, 235 F. Supp. 3d at 860. Iris Connex was a shell entity owned by an undisclosed shell entity. *Id.* at 833, 837. The owner and "driving force" behind these shell entities was an attorney who conceived and carried out every step leading to meritless lawsuits, among other egregious acts. *Id.*

Here, this matter is not comparable to *Iris Connex*. Dr. Eiffert's declaration indicates that My Health was created not just to enforce patents, but to "foster medical technologies" more than a year before the '985 Patent was assigned to My Health. Eiffert Decl., (Dkt. No. 194-1 at ¶ 5).

Additionally, My Health's litigation tactics were largely governed by My Health's general counsel and PAMH. (*Id.* at ¶ 18); (Dkt. No. 131 at 3, 4, 6-7, and11). Defendants simply point to a business credit card statement (Dkt. No. 141-3) to argue that a partner at PAMH – "A. Hoyt" – had joint access to My Health's business account, and thus My Health, PAMH, and Dr. Eiffert were essentially acting as one entity. (Dkt. No. 182 at 7). However, both Dr. Eiffert (Dkt. No. 194-1 at ¶ 35 n. 5) and PAMH, Hoyt Decl., (Dkt. No. 199-1), counter that "A. Hoyt" is a part-time independent contractor for My Health not associated with PAMH. These declarations are unrefuted by Defendants, and Defendants make no other showing that the corporate structure has been abused such that the corporate veil must be pierced to hold Dr. Eiffert personally liable.

The Court thus declines to make PAMH and Dr. Eiffert parties and subject them to judgment. Accordingly, this motion is denied in all respects.

### *2. Defendants' Request for Sanctions Against Joseph Pia*

There are at least three sources on which the Court could rely to impose sanctions: Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent powers.

Under Rule 11, attorneys have a responsibility to conduct a reasonable inquiry into the facts and law of a case when they affix their signature on any papers filed with the court. Fed. R. Civ. P. 11(b). By signing and filing those papers with the Court, attorneys certify that to the best of their knowledge the allegations and factual contentions submitted to the Court have evidentiary support. Fed. R. Civ. P. 11(b)(3). Rule 11 is designed to "reduce the reluctance of courts to impose sanctions by emphasizing the responsibilities of attorneys and reinforcing those obligations through the imposition of sanctions." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 870 (5th Cir. 1988) (*en banc*).

When certain Rule 11 sanctions may not be available, the Court may look to statutory authority to impose appropriate sanctions.[2] 28 U.S.C. § 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The statute requires that "there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Clark v. Mortensen*, 93 Fed. Appx. 643, 650 (5th Cir. 2004). Sanctions under § 1927 require "clear and convincing evidence that every facet of the litigation was patently meritless" and "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525–26 (5th Cir.2002) (emphasis in original). These sanctions are designed to be punitive in nature and generally focus on the conduct of the litigation rather than the merits. *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 694 (5th Cir.2010).

Even if relief is not available under Rule 11 or § 1927, the Supreme Court has recognized that federal courts have the inherent power to impose attorneys' fees as a sanction for bad faith litigation conduct. *Chambers*, 501 U.S. at 47–48; *see also Batson v. Neal Spelce Assoc.*, 805 F.2d 546, 550 (5th Cir. 1986) ("[F]ederal courts possess inherent power to assess attorney's fees and litigation costs when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons.") (internal quotation marks omitted). The threshold to invoke the inherent power to sanction is high and is to be used only when a court finds that "fraud has been practiced upon it, or that the very temple of justice has been defiled." *Chambers*, 501 U.S. at 46. The Court's

---

[2] The Advisory Committee's notes to the 1993 amendments to Rule 11 are instructive in this regard: "Rule 11 is not the exclusive source for control of improper presentations of claims, defenses, or contentions. It does not supplant statutes permitting awards of attorney's fees to prevailing parties or alter the principles governing such awards. It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927. *See Chambers v. NASCO*, 501 U.S. 31 (1991)."

inherent power to sanction abusive conduct extends to counsel as well as the parties. "The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464 (U.S. 1980).

Here, Defendants initially sought sanctions against Joseph G. Pia (Dkt. No. 182 at 8). Although Defendants do not specify whether the sanctions should be imposed under Rule 11, §1927, or the Court's inherent powers in its motion, Defendants argue in their reply brief (Dkt. No. 207) that sanctions should be imposed against PAMH, not just Joseph Pia, under all three sources of sanctions.

Rule 11 sanctions are not available for procedural reasons. Rule 11 provides that a "motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). Defendants' request for sanctions was made within its motion for joinder. (Dkt. No. 182 at 8). Rule 11 also provides that a motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* Defendants do not dispute PAMH's argument that Defendants failed to serve PAMH with an advance copy of the motion for sanctions prior to filing it with the Court, as required by Rule 11. *See* (Dkt. No. 198 at 6-7). "Compliance with the service requirement is a mandatory prerequisite to an award of sanctions under Rule 11." *In re Pratt*, 524 F.3d 580, 586 and n. 20 (5th Cir. 2008).

§ 1927 sanctions are not available at this time because Defendants' briefs do not contain clear and convincing evidence that would persuade this Court that every facet of this litigation was patently meritless. *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1371 (Fed. Cir.

9

2012) ("Establishing attorney misconduct under § 1927 implicates a higher level of culpability than Rule 11, and defendants have not established that Raylon's misconduct rises to the level required by § 1927."). While Joseph Pia and PAMH prosecuted an objectively weak case on the merits, Defendants have not shown that Joseph Pia and PAMH "multiplied" the proceedings in this case both "unreasonably and vexatiously." *See Iris Connex*, 235 F. Supp. 3d at 858.

This Court likewise declines to impose a sanction under its inherent powers. There must be a "finding of fraud or abuse of the judicial process before a trial court can invoke its inherent sanctioning power," and the case must be "sufficiently beyond 'exceptional' within the meaning of section 285 to justify … a sanction under the court's inherent power." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 966 (Fed. Cir. 2010) (internal quotations and citations omitted). Defendants do not allege misconduct beyond the conduct underlying the § 285 Order. Defendants contend that it is "crystal clear that [PAMH] has acted in bad faith, vexatious, wantonly, and for oppressive reasons." (Dkt. N. 207). However, the misconduct Defendants present is largely the same misconduct previously addressed in the Court's § 285 Order. Beyond that, Defendants alleged additional acts of misconduct include: (1) My Health failed to pay the fee award by December 31, 2018, (2) PAMH filed an allegedly "misleadingly redacted checking account statement," and (3) PAMH filed a motion to withdrawn (Dkt. No. 178) without meeting and conferring with Defendants. (*See* Dkt. No. 182 at 5-60. While certainly problematic, if true, none of these allegations suggest an abuse of the judicial process such that the "very temple of justice has been defiled." *Chambers*, 501 U.S. at 46. Viewed in context, these are not sufficiently egregious to justify the imposition of sanctions under the court's inherent authority.

### B. *Defendants' Contempt Motion*

Under 28 U.S.C. § 401, a district court has the power to hold any party who disobeys "its lawful writ, process, order, rule, decree, or command" in civil contempt. *See* 18 U.S.C. § 401(3). Civil contempt can serve "to enforce, through coerciveness, compliance with a court's order," and it "can be used to compensate a party who has suffered unnecessary injuries or costs because of the contemptuous conduct." *See Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 400 (5th Cir. 1987).

Defendants seek an order from this Court holding My Health in civil contempt for failing to pay the attorneys' fees previously awarded to Defendants. (Dkt. No. 183 at 3-4). However, contempt is not the appropriate mechanism for enforcing the § 285 Order. Any claim to attorneys' fees must be processed in compliance with Federal Rule of Civil Procedure 54(d)(2)(B). *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1386 (Fed. Cir. 2005). A Rule 54(d) award of attorneys' fees is considered a money judgment. Federal Rule of Civil Procedure 69 provides for post-judgment remedies. *See 3 Kids, Inc. v. Am. Jewel, LLC*, No. 3:18-MC-096-S (BH), 2019 WL 462781, at *2 (N.D. Tex. Jan. 15, 2019), *report and recommendation adopted*, No. 3:18-MC-096-S, 2019 WL 460325 (N.D. Tex. Feb. 6, 2019). Rule 69 provides that a "money judgment is enforced by a writ of execution, unless the court directs otherwise." Fed. R. Civ. P. 69(a)(1).

Here, the attorneys' fees award under § 285 is a money judgment. The Court will thus not hold My Health in civil contempt for failure to pay where such an award is enforceable through a writ of execution and other methods for enforcing money judgments. Defendants' contempt motion (Dkt. No. 183) is therefore denied. Further, Defendants' request for additional fees incurred in making this motion and its motion for joinder is denied.

### C. *PAMH's Withdrawal Motion*

"An attorney may withdraw from representation only upon leave of the court and a showing of good cause and reasonable notice to the client." *In re Matter of Wynn*, 889 F.2d 644, 646 (5th Cir. 1989). Additionally, the attorney's withdrawal must not adversely affect efficient litigation of the suit. *See Neal Techs., Inc. v. Unique Motorsports, Inc.*, No. 4:15-CV-00385, 2018 WL 837715, at *2 (E.D. Tex. Feb. 13, 2018). In terms of good cause, the Eastern District of Texas has adopted the Texas Disciplinary Rules of Professional Conduct as a guideline for governing the obligations and responsibilities of attorneys appearing before the Court. *See* Local Rule AT-2. The Texas Disciplinary Rules of Professional Conduct outline six situations in which good cause would exist for withdrawing from representation of a client. *See* Tex. Disciplinary R. of Prof'l Conduct 1.15(b)(1)–(6). In terms of the effect on the litigation of the suit, it is incumbent on the Court to assure the prosecution of the lawsuit before disruption by the withdrawal of counsel, even where good cause for withdrawal exists. *See Neal Techs.*, 2018 WL 837715, at *2; *see also* Tex. Disciplinary R. of Prof'l Conduct 1.15(c) ("When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.").

PAMH was retained by My Health for representation in this matter. PAMH contends that My Health has failed to pay its attorneys' fees and that it appears that My Health will be unable to make payments in the future. (Dkt. No. 178). According to PAMH, there is no remaining litigation other than My Health's obligation to pay Defendants' attorneys' fees by the end of December 2018. (*Id.* at 2). Thus, PAMH argues that it has complied with its duty to represent My Health through the completion of this case. (*Id.*). Relying on Rule 1.5(b)(5) of the Rules of the Texas Rules of Professional Conduct, PAMH seeks to withdraw as counsel of record for My Health based on its failure to pay. (Dkt. No. 180 at 3).

PAMH has shown good cause for withdrawal pursuant to Rule 1.5(b)(5) of the Rules of the Texas Rules of Professional Conduct. However, this Court still has a duty to assure the efficient litigation of this case. While PAMH is correct that judgment has been entered, the issue concerning payment of Defendants' attorneys' fees remains an issue before this Court. Without representation, My Health cannot appear in this Court, for it is a "well-settled rule of law that a corporation cannot appear in federal court unless represented by a licensed attorney." *Memon v. Allied Domecq QSR*, 385 F.3d 871, 874 (5th Cir. 2004). No other counsel has appeared on behalf of My Health. Thus, PAMH's motion to withdraw (Dkt. No. 178) is denied without prejudice to re-filing once My Health has secured additional counsel.

## CONCLUSION

For these reasons, the Defendants' fee award cannot be enforced by Defendants' proffered methods. Accordingly, Defendants' motion to join Pia Anderson Moss Hoyt LLC and Dr. Michael Eiffert (Dkt. No. 182) and motion to supplement the joinder motion with a supplemental pleading (Dkt. No. 230) are denied as improper. Likewise, Defendants' motion to show cause (Dkt. No. 183) is denied. Finally, Mr. Pia's motion to withdraw as counsel for My Health (Dkt. No. 178) is denied without prejudice.

**SIGNED this 5th day of June, 2019.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE